Ray GASPER, Petitioner,

v.

COMMISSIONER OF INTERNAL
REVENUE, Respondent.

No. 12304.

United States Court of Appeals
Sixth Circuit.

July 6, 1955.

Edgar W. Pugh, Detroit, Mich., for petitioner.

Dudley J. Godfrey, Washington, D. C., for respondent. H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, Harry Baum, Washington, D. C., on the brief.

Before SIMONS, Chief Judge, and McALLISTER and MILLER, Circuit Judges.

McALLISTER, Circuit Judge.

This is a review of a decision of the Tax Court holding that a determination of the Commissioner of Internal Revenue of a deficiency against the petitioner raised a presumption of correctness. Petitioner contends that the evidence discloses that the method used by the Commissioner was wrong, and calculated to produce incorrect results, and that, accordingly, there was no presumption that the determination was correct.

The evidence discloses that the petitioner conducted a bar business and that the Commissioner determined a deficiency against him by the use of a mark-up method instead of basing such determination upon his receipts and costs. Petitioner contended before the Tax Court that the records maintained by him for his bar business correctly reflected his income, including total receipts from that source; that his returns were based upon those records; and that respondent Commissioner erred in not accepting as correct the gross receipts reported in his returns for the years in question,

1942 through 1946. He testified that he had made a daily record of his receipts; that the receipts reported in his returns for the years in question were based upon the records thus made; that, at the request of the Deputy Collector, he had submitted such records to him for examination, but that the latter declined to accept them, stating that petitioner's receipts would be determined by a mark-up method. However, the Deputy Collector and his supervisor testified that petitioner was repeatedly asked to furnish evidence as to his receipts for the years in question, but failed to do so. During the hearing, petitioner testified that he had with him his records for 1946 which showed his daily receipts and daily expenditures for that year, and that he kept records of the same type for each year. These records were not, however, introduced in evidence and the Tax Court held that, since it was not proved by the evidence that petitioner maintained records of his receipts, it could not find that the Commissioner erred in not accepting as correct the receipts reported by petitioner in his returns.

It, nevertheless, appeared on the hearing before the Tax Court, from the facts presented as to petitioner's liquor sales in 1945—one of the taxable years—that the mark-up method used by the Commissioner resulted in an overstatement of actual receipts for the year from brands of liquor selling at one price, and understatements, from brands selling at another price.

The Tax Court pertinently observed that, since the number of bottles of each brand of liquor sold during each year was determined, as well as the brands contained in each group of selling prices per drink, and the number of one-ounce drinks obtained from each bottle, it was not apparent why the Commissioner used percentage mark-ups to arrive at petitioner's receipts from the sales of the liquor. It further found that the Commissioner's mark-up method had resulted in a wholly incorrect determination and, as an illustration of that

fact, the Tax Court stated: "The respondent determined that 239 bottles of brands selling at 25 cents per drink were sold in 1945 and that there were 22 drinks obtained from each bottle. On that basis, there were 5,258 drinks sold during the year at 25 cents which would amount to receipts of $1,314.50 for the year from such brands." The Tax Court then went on to show the fallacy of the mark-up method which the Commissioner had adopted: "From the evidence submitted $1,314.50 would appear to be the greatest amount that the petitioner realized from the sale of 239 bottles of such brands. However, by use of a percentage mark-up the respondent has determined that the total sales of such brands amounted to $1,981.65, or an overstatement of more than 50 per cent of the amount the petitioner realized. The respondent determined that 22 bottles of brands selling at 65 cents per drink were sold during the year. This would give a total of 484 drinks which at 65 cents would amount to $314.60. The respondent has determined that the total sales of these brands was $208.50, or an understatement of more than 30 per cent of the amount realized by petitioner."

After the above recital of the facts, the Tax Court concluded: "Since the method used by respondent produces results at variance with the basic facts, it can not be sustained as one calculated to correctly establish the petitioner's receipts." The court found that, while the Commissioner's determination as to the petitioner's sales or receipts with regard to beer, wine, and other items should be sustained, the determination as to liquor should be recomputed, by multiplying the number of bottles in each selling price group by 22 drinks per bottle, and multiplying that product by the selling price per drink. The court added that the foregoing method was properly applicable to all the other years involved, and that it was to be applied in recomputing the liquor receipts for those years.

In brief, the Tax Court held that the mark-up method used by the Commis-

sioner in determining the deficiencies as to petitioner's income from liquor for the year 1945 was wrong, and did not establish what his receipts actually were; that the same incorrect method had been used by the Commissioner for all of the other taxable years; that petitioner's receipts from the sale of liquor for 1945 should be recomputed by the method above outlined by the court; and that such method was properly applicable to all of the taxable years in question, and should be applied in recomputing liquor receipts during those years.

Petitioner thereafter recomputed his liquor receipts for 1945 in accordance with the Tax Court's direction, and further submitted that there was no testimony or evidence from which could be determined the number of bottles in each selling group for the taxable years of 1942, 1943, 1944, or 1946. He further set forth that he had requested from counsel for respondent any records he might have as to the number of bottles in each selling group for the years involved, but that such counsel did not claim to have the records or to have ever prepared them.

The Tax Court thereupon ordered the case reopened for further hearing, reciting in its order that it appeared from the transcript of record that full and complete information as to the total number of bottles comprising petitioner's purchases for the years 1942, 1943, 1944, and 1946, together with the cost price thereof, was available to both parties and that, in fact, respondent's agent, in his investigation prior to the date of notice of deficiency, had obtained such information from the files of the Michigan Liquor Control Commission. The court, in its order, limited the reception of proof to the actual number of bottles comprising petitioner's purchases for the tax years above mentioned, and the cost of such purchases to petitioner, and for no other purpose. Thereafter, neither party presenting such proofs, the Tax Court filed a supplemental opinion and findings of fact, in which it stated that it had

previously found that the percentage mark-up method employed by the respondent in determining the amount of petitioner's liquor sales for 1945 produced results at variance with the facts shown as to the number of drinks obtained per bottle, the selling prices for the different groups of brands, and the number of bottles in each selling price group sold during that year; that it had held that petitioner's receipts from the sale of liquor during 1945 were to be recomputed by multiplying the number of bottles in each selling price group by 22 drinks per bottle, and multiplying that product by the selling price per drink. The Tax Court further stated, in its supplemental findings, that respondent had employed the same incorrect percentage mark-up method in determining petitioner's liquor sales for 1942, 1943, 1944, and 1946, as in the case of the year 1945; that, in view of this circumstance and the erroneous results flowing from the use of the mark-up method for 1945, and since the record which indicated the actual number of bottles of liquor purchased during each of the years in question, and the cost of each, was available to, and in the possession of the petitioner, and had also been available to and in the possession of respondent, the court had directed that the receipts from the sale of liquor for those years were to be recomputed by the method which it had specified in its order. However, the court went on, petitioner had filed a recomputation for 1945 only and had asserted he was unable to compute income on the basis of the opinion of the court for the other years at issue because of the lack of any evidence in the record with respect to the number of bottles of liquor purchased during those years, and the price of each. For the same reason, the court observed, respondent had failed to make the recomputation directed. Then, because neither party had made the recomputation, the Tax Court held that although the mark-up method employed by respondent was wrong and not calculated to establish correctly peti-

tioner's receipts, nevertheless, the burden was upon petitioner to show that such mark-up method used by the respondent produced erroneous results; that, except for the year 1945, no such showing had been made; and that petitioner had not proposed any other method as being one calculated more correctly to reflect his receipts for liquor sales in the years other than 1945. Accordingly, the court sustained respondent's determination for the years other than 1945.

The Tax Court, therefore, held that while the method adopted by the Commissioner to determine deficiencies of petitioner is wrong and obviously leads to an incorrect conclusion, nevertheless, since the Commissioner had made such a determination—even though by such an erroneous method—the burden was upon the petitioner to show that the method used produced erroneous results. Although petitioner proved that, for the year 1945, the method produced erroneous results, and although the same method was used by the Commissioner for the other taxable years, and according to the Tax Court, was a wrong method and not calculated to produce correct results, the determinations of the Commissioner, based upon such a method, were sustained.

The above conclusion of the Tax Court appears directly contrary to the holding of the Supreme Court in Helvering v. Taylor, 293 U.S. 507, 55 S.Ct. 287, 289, 79 L.Ed. 623. There, the court, speaking through Mr. Justice Butler, observed that the Commissioner's contention in that case was that the burden was upon the taxpayer not only to prove that the Commissioner's determination was erroneous, but to show the correct amount of the tax. "In substance he says that, because of the taxpayer's failure to establish facts on which a fair apportionment may be made, the Board's redetermination at the Commissioner's erroneous figure was valid, and, there being no error of law, should have been sustained by the court." This contention is the same as is made by the Commissioner in the instant case. The Supreme Court, however, remarked: "We find nothing in the statutes  *  *  *  or our decisions that gives any support to the idea that the Commissioner's determination shown to be without rational foundation and excessive will be enforced unless the taxpayer proves he owes nothing or, if liable at all, shows the correct amount." The court then went on to hold:

"Unquestionably the burden of proof is on the taxpayer to show that the Commissioner's determination is invalid.  *  *  *  Frequently, if not quite generally, evidence adequate to overthrow the Commissioner's finding is also sufficient to show the correct amount, if any, that is due.  *  *  *  But, where as in this case, the taxpayer's evidence shows the Commissioner's determination to be arbitrary and excessive, it may not reasonably be held that he is bound to pay a tax that confessedly he does not owe, unless his evidence was sufficient also to establish the correct amount that lawfully might be charged against him. On the facts shown by the taxpayer in this case, the Board should have held the apportionment arbitrary and the Commissioner's determination invalid. Then, upon appropriate application that further hearing be had, it should have heard evidence to show whether a fair apportionment might be made and, if so, the correct amount of the tax."

In Durkee v. Commissioner, 6 Cir., 162 F.2d 184, 187, 173 A.L.R. 553, where the Commissioner had made an arbitrary determination, and thereafter contended that the burden was upon the taxpayer to prove that a certain recovery for damages in the settlement of a law suit was not taxable, or to prove the proper allocation between what was taxable income and nontaxable income, Judge Miller, speaking for the court in overruling such contention, said that "where it is apparent from the record that the Commissioner's determination is arbitrary and

288

excessive, the taxpayer is not required to establish the correct amount that lawfully might be charged against him, and he is not required to pay a tax that he obviously does not owe. In proceedings before the Tax Court, as distinguished from suits for refund in the District Court, it is sufficient to show that the Commissioner's determination is invalid. Upon such a showing the case should be remanded to the Tax Court for further hearings on the point involved."

■ In the light of Helvering v. Taylor, supra, and Durkee v. Commissioner, supra, the Commissioner's determination in the instant case should be set aside since any presumption in its favor disappears once the determination has been proved incorrect; and there is no burden upon the taxpayer to show what the correct amount of the deficiency should have been.

It would appear, however, regardless of what has gone before, that the Commissioner may have sufficient records or information to enable him to make the redetermination in accordance with the correct method outlined by the Tax Court; and the case will be remanded to give him that opportunity.

■ With regard to the matter of depreciation, it appears that although petitioner made no claim for that item in his returns, the Commissioner, nevertheless, allowed him a deduction of $400 a year. In his amended petition, the taxpayer demanded a greater allowance and, at the hearing, made general statements that the cost of the bar furniture and fixtures exceeded $10,000. No corroborating evidence was submitted, nor was there any evidence as to the probable useful life of the assets. On this state of the record, the Tax Court held that petitioner had failed to establish that he was entitled to greater depreciation allowances than had been granted. Petitioner's contention was based upon the fact that in a later year, the Commissioner allowed a greater amount of depreciation. However, such determination of

a depreciation allowance for a later year cannot operate to estop the Commissioner from making the correct allowance for earlier years; and there is no reason appearing on the record before us to suppose that the amount allowed for the later year was correct, while that allowed for the taxable years was incorrect, rather than the reverse. We are unable to say, from the record, that the Commissioner did not allow petitioner a reasonable amount of depreciation.

■ Petitioner claims that the three-year statute of limitations applies, rather than the five-year period. Section 275(a) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 275(a), states the general rule that the period is three years after the return is filed. Section 275(c) provides for a five-year period if "the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 per centum of the amount of gross income stated in the return". The point of petitioner's claim in this regard is that, if the three-year period applies, the deficiency notice was untimely as to the years 1943 and 1944. If the five-year period applies, the deficiency notice was timely. It may be remarked that certain extensions were consented to by petitioner which applied to both the three-year and the five-year periods. Whether the special five-year period applies in lieu of the three-year period depends upon whether the statutory condition stated in Section 275(c) exists, namely, upon whether the taxpayer understated his gross income by more than 25%—a matter which cannot be known until the amount of the asserted deficiency is agreed upon, or, if contested, finally redetermined by the Tax Court. If, as respondent sets forth in his brief, it turns out that there has been an understatement of income by more than 25%, then the five-year period specified in Section 275(c) applies, whatever may have been the taxpayer's state of mind when he executed the return or consented to an extension of the period of limitations. Since it will be necessary

to remand this case in order to give the Commissioner an opportunity to redetermine the deficiencies, it remains to be seen whether the three-year period or the five-year period applies.

In accordance with the foregoing, the decision of the Tax Court is reversed and the case remanded for further proceedings not inconsistent with this opinion.