Florence M. BARNES, and Barnes Theatre Ticket Service, Inc., an Illinois corporation, Petitioner-Appellant,

v.

The COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

No. 16968.

United States Court of Appeals Seventh Circuit.

March 5, 1969.

Rehearing Denied April 10, 1969.

Swygert, Circuit Judge, dissented.

George D. Crowley, Chicago, Ill., for petitioner-appellant, Crowley, Goschi & Griffin, Chicago, Ill., of counsel.

Mitchell Rogovin, Asst. Atty. Gen., Stephen H. Hutzelman, J. Edward Shillingburg, Lee A. Jackson, Attys., Tax Div., U. S. Dept. of Justice, Washington, D. C., for respondent-appellee.

Before HASTINGS, Senior Circuit Judge, and SWYGERT and CUMMINGS, Circuit Judges.

HASTINGS, Senior Circuit Judge.

The cases of three taxpayers were consolidated for trial in the Tax Court of the United States, Honorable Charles R. Simpson, Judge presiding.

Barnes Theatre Ticket Service, Inc. (Barnes), Docket No. 1210–64.

Albert C. Eckardt and Cassandra Eckardt (Eckardts), Docket No. 1211–64.

Florence M. Barnes (Florence), Docket No. 1212–64.

The respondent Commissioner of Internal Revenue had asserted deficiencies against the taxpayers in each of the three cases.

Following a trial, the court found and held:[1]

(1) The issues in Docket No. 1211–64 favorable to the Eckardts, and the Commissioner has not appealed from this ruling;

(2) That certain sales made by Barnes to other ticket brokers in the taxable years 1955 through 1958 were "wash sales" which did not result in income to Barnes during those years, and the Commissioner has not appealed from this ruling;

(3) That the withdrawal of funds by Florence from Barnes in 1958 constituted a repayment of funds previously loaned by her to it and was not taxable to her as a dividend, and the Commissioner has not appealed from this ruling;

(4) That the Commissioner was correct in finding Barnes had overstated its cost of operations for the taxable years 1955 through 1958 in the following amounts:

## COST OF OPERATIONS

| Year | Claimed | Allowed | Overstatement Cost of Operation |
|------|---------|---------|---------------------------------|
| 1955 | $569,785.75 | $499,010.61 | $70,775.14 |
| 1956 | 499,164.30 | 436,451.28 | 62,713.02 |
| 1957 | 391,912.95 | 370,077.06 | 21,835.89 |
| 1958 | 475,372.89 | 460,929.65 | 14,443.24 |

And, that Florence realized additional taxable income from Barnes in the years 1955 through 1958 in amounts corresponding to the overstated costs of operation disallowed to Barnes.

Barnes and Florence now file their joint petition for review.

The contested issues on review may be generally stated as (1) whether the Tax Court correctly held that Barnes failed to sustain its burden of showing that its costs of operations exceeded the amounts allowed by the Commissioner;

and (2) whether the Tax Court correctly held that Florence, president and sole shareholder of Barnes, had taxable income (constructive dividends) to the extent that Barnes overstated its cost of operations.

Based on our examination of the record, we shall summarize the facts relevant to this review.

During the taxable years in question, Florence was the president of and sole shareholder in Barnes, an Illinois corporation, whose principal office was lo-

1. The thorough and well-considered memorandum findings of fact and opinion of Judge Simpson was filed December 18, 1967, Docket Nos. 1210-64—1212-64, 26 TCM 1290.

cated in the Palmer House Hotel in downtown Chicago.

Barnes, engaging in the ticket brokerage business, purchased tickets of admission to sundry entertainment events and then resold them at charges in excess of established box office prices. The tickets were resold from a counter adjacent to the corporate offices in the Palmer House Hotel and from 14 other stands located in hotels and private clubs in the Chicago area.

Control over both the purchase and the resale of tickets was maintained by Barnes' central office in the Palmer House.

Barnes secured tickets for resale from many different sources. It purchased them from box offices of various theaters and sporting arenas and from persons or organizations engaged in the production of theatrical performances and sporting events; Barnes also bought tickets via mail orders and from people not regularly engaged in the ticket vending business.

Under a working arrangement with the box office personnel of various theatres and sporting arenas, choice tickets of admission for different Chicago attractions were forwarded to Barnes' office at the Palmer House. Included with the tickets from each box·office was a slip of paper which set forth the cost per ticket, the number of tickets purchased, and the amount of premium, if any, over the box office price paid by Barnes. Barnes' bookkeeper, Anne Magner, recorded in the regular course of business *some* of the information found on these slips of paper; thereafter, Miss Magner destroyed the box office slips. Under this arrangement, Barnes was permitted to return, prior to a performance or event, unsold tickets to the appropriate box office for full refund of the purchase price.

Barnes maintained close daily control over the sale of tickets by requiring each of its vending stands to send the main office proceeds from each day's sales, together with a sheet indicating the date, the number of tickets sold by the stand, the number of tickets being returned, the amount of money received, the customer's name, the names of the theaters to which the tickets applied, and an inventory of tickets. The accompanying sheets contained neither a designation as to the cost of the tickets to Barnes nor a figure indicating the premium paid for the tickets, if any, over established box office prices. The daily proceeds were checked against these sheets and then entered into the cash receipts book. Currency proceeds from sales were either deposited in Barnes' bank account or placed in the office safe to serve as operating capital. Check proceeds were deposited in Barnes' bank account.

Miss Magner summarized monthly the daily stand reports and drew up quarterly summaries which were utilized in the preparation of Barnes' federal excise tax return. The quarterly sales recaps did not, however, reflect a complete record of all Barnes' ticket sales; the quarterly figures excluded sales made at box office prices and for charitable functions and included only those sales on which an excise tax was due. The type of tickets sold, the box office price of the tickets and Barnes' selling price can be determined from these quarterly sales recaps.

Although Barnes' cash receipts book and cash disbursements book (Exhibits 15 and 16) are not in the record before us, we assume that the Tax Court's conclusions with respect to these books are correct since neither party disputes those findings upon appeal.

In 1955, the cash receipts book reveals total cash purchases by Barnes on a per week per theater basis. For the later taxable years in question, the cash receipts book indicates cash purchases for periods varying from one to several weeks and is generally without entries showing the names of the theaters and persons from whom tickets were purchased, the dates of the purchases, and the amounts paid for particular tickets or bundles of tickets.

While the majority of the ticket purchases by Barnes were cash transactions, some were paid for by check. All purchases by check for the years 1955 through 1958 were recorded in the cash disbursements books.

Based essentially on these facts, the Tax Court upheld the Commissioner's determination that the cost of operation alleged by Barnes Theatre Service, Inc. was overstated during the years 1955 through 1958 and that the amount of such overstatement constituted additional income to Mrs. Barnes. These holdings were premised on the court's conclusion that the petitioners failed to overcome the presumption of correctness which normally attaches to Internal Revenue determinations of this nature.

To hurdle the presumption obstacle, the tax court suggested that the taxpayer show " * * * that the asserted deficiency was computed in an improper manner or * * * [show] that its books and records are adequate and accurately reflect its income, or * * * [produce] a combination of such evidence."

In this case, the Tax Court specifically found that Barnes' books and records failed to adequately and reliably reflect costs of operation; and that Barnes adduced no evidence with respect to the propriety of the computation of the asserted deficiency.

Taxpayers contend that the statutory notices of deficiency were so incomplete that the presumption of correctness should not attach to the determination. Further, that since the statutory notices neglected to state the basis for the deficiency determination the action of the Commissioner was arbitrary and therefore invalid. We disagree with taxpayers on both contentions.

■ We are of the opinion that the notice of deficiency complies with the statute, Section 6212(a) of the 1954 Code, which provides in general that "If the Secretary or his delegate determines that there is a deficiency in respect of any tax * * *, he is authorized to send notice of such deficiency to the taxpayer by certified mail or registered mail." Int. Rev. Code of 1954 § 6212. Commissioner of Internal Revenue v. Forest Glen C. Co., 7 Cir., 98 F.2d 968, 971 (1938), cert. denied, 306 U.S. 639, 59 S.Ct. 487, 83 L.Ed. 1039.

■ Further, it seems clear that the Commissioner's notice of deficiency is not invalidated because it contains no particulars or explanations concerning how the alleged deficiencies were determined. Commissioner of Internal Revenue v. Stewart, 6 Cir., 186 F.2d 239, 242, 24 A.L.R.2d 793 (1951).

■ It was cogently stated in Olsen v. Helvering, 2 Cir., 88 F.2d 650, 651 (1937) that "the notice is only to advise the person who is to pay the deficiency that the Commissioner means to assess him; anything that does this unequivocally is good enough."

■ As Judge Simpson noted in 26 TCM at 1293: "In so holding, we are not approving of the deficiency; we are merely saying that the notice of deficiency is sufficient to raise the presumption of correctness and to place the burden of proof on the petitioners."

We find no prejudice to taxpayers resulting from the form of the statutory notices. The contentions urged and won on other issues are indicative that the taxpayers were fully informed of the Commissioner's actions.

■ It is axiomatic that unless otherwise provided by statute the Commissioner's tax deficiency determinations are to be presumed correct. The presumption is procedural and transfers to the taxpayer the burden of going forward with the evidence to show that the Commissioner's determination is incorrect. Tax Court Rule 32, 26 U.S.C.A. § 7453; Foster v. C.I.R., 4 Cir., 391 F.2d 727, 735 (1968); Stout v. C.I.R., 4 Cir., 273 F.2d 345, 350 (1959); Cohen v. C.I.R., 9 Cir., 266 F.2d 5, 11 (1959); Zeddies v. C.I.R., 7 Cir., 264 F.2d 120, 126 (1959). See 9 Mertens, Law of Federal Income Taxation § 50.61. To overcome the presumption, it is not in-

cumbent on the taxpayer to prove he owes nothing or to show the correct amount which he might owe. Helvering v. Taylor, 293 U.S. 507, 514, 55 S.Ct. 287, 79 L.Ed. 623 (1935); United States v. Hover, 9 Cir., 268 F.2d 657, 665 (1959). It is equally true that the Commissioner's determination is invalid when it is shown to be arbitrary or capricious. Helvering v. Taylor, *supra;* Cohen v. C.I.R., *supra,* 266 F.2d at 11; 9 Mertens *supra* at § 50.65.

The critical question then arises, as stated by the Tax Court, whether taxpayers adduced sufficient evidence showing that the asserted deficiencies were computed in an improper manner or by showing that its books and records adequately and accurately reflected its income, or by producing a combination of such evidence.

■ In a careful and detailed analysis of the evidence presented by taxpayers, the court found that Barnes had failed to show "that its books and records accurately reflect its costs of operation." 26 TCM at 1294. We agree. This conclusion is buttressed by the failure of Florence to testify or to explain her admissions to the Commissioner's agent that the records of Barnes did not reflect the true cost of the tickets. She was present during the hearing.

It is apparent that while Barnes' books and records seem quite complete in recording its income, the failure lies in the incomplete information used to record the cost of the tickets. Invoices were destroyed; there was a lack of substantiation of the figures appearing in the recaps; and there was no identification of any person or theater to whom premium prices were paid for tickets.

In addition to the failure of the books and records to substantiate the cost of tickets, Florence admitted to Special Agent Shadduck that the books were in-

accurate and did not reflect the true cost of the tickets and that expenses other than the purchase of tickets were included on the recap sheets. Some of these extra expenses were payments to legislators as "lobbying" expenses. When asked for further identification of her sources of tickets, Florence replied, "If I tell you, I will be out of business, because the source of my tickets will dry out." For whatever reasons she may have had, Florence did not testify.

We agree with Judge Simpson's observation: "Finally, a very dark cloud is cast on the reliability of the cost information in the books by statements which Florence made to the agent of respondent during the investigation of the tax liabilities of Barnes." We further agree that taxpayers' objections to the admission of this testimony were properly denied. 26 TCM at 1294.

Taxpayers contend with much force that the Commissioner erred in not introducing the testimony of Agent George Mowdry at the trial. It is conceded that Mowdry was primarily responsible for the income tax investigation of Barnes and prepared the assessment of deficiencies asserted in the notices. It was also suggested during the trial that the court would "have to wait until Mr. Mowdry is on the stand to attempt to establish [Barnes' income tax deficiency]." Mowdry did not testify and was not called to the stand by either party. The manner in which the alleged overstatement in costs was computed was not shown.

While the overall approach of the Internal Revenue Service to this case has been a source of vexation to the taxpayers and has made the decision in this case difficult, we have no doubt that if Barnes' books and records had been shown to be accurate and reliable [2] and had Florence testified, then without the testimony of Agent Mowdry we would

---

2. Pursuant to § 6001 of the Internal Revenue Code of 1954, Federal Tax Regulation 1.6001–1 provides that a taxpayer "shall keep such permanent books of account or records, * * * as are sufficient to establish the amount of gross income, deductions, credits, or other matters required to be shown by such person in any return of such tax or information."

be compelled to reverse and find for taxpayers.

However, in the absence of such showing by the taxpayers and in light of the record in this case, we cannot say that such adverse findings by the Tax Court are clearly erroneous. Banks v. C.I.R., 8 Cir., 322 F.2d 530, 537 (1963). We have found no authority justifying a departure from the well-established rule of presumption of correctness, under the findings in this case.

We, therefore, conclude and hold that the evidence adduced by taxpayers was not sufficient to overcome the presumption of correctness.

We have carefully read the entire record in this case and authorities cited by both parties. Contentions not specifically mentioned here are found to be without merit.

For the foregoing reasons, the petition for review is denied and the decisions of the Tax Court under review are affirmed.

Petition denied. Decisions affirmed.

SWYGERT, Circuit Judge (dissenting).

I dissent for two reasons. First, despite the majority's statement that "We have found no authority justifying a departure from the well-established rule of presumption of correctness," I believe that under the circumstances here presented the weight accorded by the Tax Court to the Commissioner's deficiency notice was erroneous. Secondly, I am of the opinion that the majority's position, if logically extended, could lead in the future to an unfortunate level of high-handedness on the part of the Commissioner.

My difficulty with the majority's opinion begins with what I believe to be a mistaken statement of the contested issue. The real question presented by this case is what effect should be given by the Tax Court to the Commissioner's notice of deficiency in a situation where the taxpayer asserts that the notice is incomplete and arbitrary. As the major-

ity recognizes it is settled that as a general rule a presumption of correctness attaches o the Commissioner's deficiency notice. It is my view that, although this presumption is one which places on the taxpayer the burden of going forward with evidence, by no stretch of the imagination can it be the basis of a judgment favorable to the Commissioner when the notice is arbitrary, even if the taxpayer's books cannot disprove every possible theory of taxation.

Stated simply, the majority's position is that once the Commissioner's deficiency notice is introduced into evidence and the production burden consequently moves to the taxpayer, he can shift this burden back to the Commissioner only when his books can conclusively disprove the asserted deficiency. This construction oversimplifies the functioning of the correctness presumption. Although I agree that if at trial the taxpayer offers *no* evidence, the Commissioner's deficiency notice is sufficient evidence to find in his favor, I do not believe that this Commissioner-wins rule should operate if the taxpayer produces competent evidence on the issue of the arbitrariness of the asserted deficiency. If the taxpayer offers some competent evidence on this point, then the question of the existence of a deficiency must be decided on all the evidence submitted at the trial.

The law is clear that the presumption of correctness which ordinarily attaches to the action of the Commissioner vanishes if his action is arbitrary. Helvering v. Taylor, 293 U.S. 507, 55 S.Ct. 287, 79 L.Ed. 623 (1935). See also Gasper v. Commissioner of Internal Revenue, 225 F.2d 284 (6th Cir. 1955); Welch v. Commissioner of Internal Revenue, 297 F.2d 309 (4th Cir. 1961). The deficiency notice in the instant case contained the asserted tax deficiencies which were based on the alleged overstated costs of the taxpayers' operations, spelled out to the penny. This is not a case where the Commissioner with proper candor acknowledges that because of a taxpay-

er's inadequate records an admittedly arbitrary deficiency figure has been chosen. What happened here was that after introduction of the deficiency notice with its apparently meticulously calculated figures, the taxpayers sought through the introduction of their books and records to establish the fact not only that they owed no additional tax, but also to demonstrate that the Commissioner's deficiency notice had no ascertainable empirical basis. The Commissioner offered no evidence to rebut the taxpayers' contention. In effect, what the taxpayers sought to do was to elicit from the Commissioner precisely what costs of operation he concluded they had erroneously included in their tax computations. The taxpayers' request to know what cost items were being disallowed was surely reasonable.

Nonetheless, the Tax Court disregarded the taxpayers' attack on the deficiency notice and invoked the correctness presumption on the ground that the taxpayers had failed to show that their books and records accurately reflected the ticket agency's cost of operation. Likewise, this court holds that because the taxpayers' books were not suitable to disprove all the Commissioner's theories of cost and taxation, the taxpayers cannot attack the arbitrariness of the Commissioner's deficiency notice. This approach is tantamount to saying that a taxpayer whose books are not one hundred per cent accurate has no standing to challenge or question a deficiency notice, however arbitrary.

Nothing in the prior case law justifies a holding that the maintenance of perfect account books is a prerequisite to the taxpayer's right to challenge the arbitrariness of a deficiency notice. In my opinion a court should not reach the question of the quality of a taxpayer's books if the taxpayer asserts and demonstrates that the Commissioner's deficiency is arbitrary. As the Sixth Circuit said in Durkee v. Commissioner of Internal Revenue, 162 F.2d 184, 187, 173 A.L.R. 553 (6th Cir. 1947): "But where it is apparent from the record that the

Commissioner's determination is arbitrary and excessive, the taxpayer is not required to establish the correct amount that lawfully might be charged against him, and he is not required to pay a tax that he obviously does not owe. In proceedings before the Tax Court * * it is sufficient to show that the Commissioner's determination is invalid. Upon such a showing the case should be remanded to the Tax Court for further hearings on the point involved." Such an approach should be followed here. In the instant case, the Commissioner had an opportunity to offer evidence as to the basis, if any, of his deficiency assessment. Agent George Mowdry, who conducted the special income tax investigation into the Barnes' tax matter, was never called to the stand by the Commissioner to explain how the deficiency had been computed.

In reality the Tax Court by casting doubt on the reliability of the taxpayers' evidence ruled that they had produced no evidence at all. This conclusion was unwarranted. Once competent evidence is proffered which indicates the incompleteness or arbitrariness of the deficiency notice, the presumption of correctness disappears regardless of the absolute reliability of the taxpayer's evidence. At this point the production burden shifts back to the Commissioner to show how he arrived at his determination. The Commissioner cannot avoid his burden by merely discrediting the taxpayer's evidence. In an analogous factual situation, this court said: "The disbelief of * * * testimony [of the witness] cannot support an affirmative finding that the reverse of his testimony is true, that is, it cannot supply a want of proof." Bankers Life and Casualty Co. v. Guarantee Reserve Life Ins. Co., 365 F.2d 28, 34 (7th Cir. 1966), cert. denied, 386 U.S. 913, 87 S.Ct. 862, 17 L.Ed.2d 785 (1967). Similarly here, it does not follow that because the taxpayers' books cannot disprove the theory of taxation selected by the Commissioner, the Commissioner's assessment is correct and cannot be shown to be arbitrary.

Additionally, I am concerned with what the majority's decision might permit the Commissioner to do with future taxpayers. If the Commissioner knows that a particular taxpayer's books and records are not any more accurate or all encompassing than those kept by the Barnes' ticket agency, as a result of our decision, there is nothing to prevent the Commissioner from selecting an arbitrary figure, putting it in a tax deficiency notice, and then proceeding to enforce the deficiency. Our decision would allow the Commissioner to prevail, despite the completely arbitrary nature of his assessment, because the taxpayer's insufficient books would preclude him from attacking the deficiency. On account of his imperfect bookkeeping, a taxpayer would be deprived of his standing just as the taxpayers here were unable to pierce the veil of the correctness presumption in the instant case.