T.C. Memo. 2013-163


UNITED STATES TAX COURT


JOHN C. HOM, Petitioner <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 9399-11.                    Filed July 8, 2013.


John C. Hom, pro se.

<u>Tyler N. Orlowski</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


COHEN, <u>Judge</u>:  Respondent determined the following deficiencies,

additions to tax, and penalties with respect to petitioner's Federal income tax:

| [*2] | | | Additions to tax | | Penalty |
| --- | --- | --- | --- | --- | --- |
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6651(a)(2) | Sec. 6654 | Sec. 6662(a) |
| 2005 | $67,263 | $16,815.75 | -0- | -0- | $13,452.60 |
| 2006 | 53,181 | 13,285.75 | -0- | -0- | 10,636.20 |
| 2007 | 96,240 | 21,654.00 | $15,879.60 | $3,244.36 | -0- |
| 2008 | 38,938 | 8,761.05 | 4,088.49 | 1,251.32 | -0- |

After concessions, the issues for decision are: (1) whether the notice of deficiency is invalid for failing to include the address and telephone number of the local office of the National Taxpayer Advocate as directed by section 6212(a); (2) whether the notice of deficiency is invalid with respect to 2007; (3) whether petitioner received unreported wages of $114,323.73, $103,513.97, $68,578.04, and $88,581.76 in 2005, 2006, 2007, and 2008, respectively, from his wholly owned subchapter C corporation, John C. Hom & Associates (JCHA); (4) whether petitioner was an employee of JCHA pursuant to section 3121(d)(1) or (2); (5) whether petitioner is entitled to deduct additional gambling losses for 2006, 2007, and 2008, and if so, in what amounts; (6) whether petitioner is entitled to deduct additional gambling expenses under section 162(a) for 2005, 2006, 2007, and 2008; (7) whether petitioner is entitled to deduct other expenses listed on the Schedules C, Profit or Loss From Business, for his laundromat business in amounts greater than respondent conceded; and (8) whether petitioner is liable for

**[*3]** accuracy-related penalties under section 6662(a) for 2005 and 2006. The parties agree that petitioner was required to use the married filing separate status during the years in issue. Unless otherwise indicated, all section references are to the Internal Revenue Code as in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. Petitioner resided in California when he filed his petition.

### I. Background

Petitioner received a bachelor of science degree from the University of California at Berkeley. Petitioner has been licensed by and registered with California as a civil engineer and a geotechnical engineer since 1978.

### II. Petitioner's Businesses

#### A. JCHA

On April 2, 1986, petitioner registered JCHA, his wholly owned subchapter C corporation, as a California corporation. Petitioner is the president and chief executive officer of JCHA, and no other person has served as an officer of JCHA. On March 1, 2004, the State of California Franchise Tax Board suspended JCHA's

**[*4]** corporate powers, rights, and privileges for failure to pay State income taxes. Nevertheless, JCHA continued its business operations during the years in issue.

Petitioner managed the day-to-day operations of JCHA, and he alone provided licensed engineering services for JCHA during the years in issue. Petitioner did not perform engineering services for any other engineering firm during the years in issue, and he maintained health insurance through JCHA during the years in issue.

According to time records JCHA maintained, petitioner worked the following hours:

| Start date | End date | Hours |
| --- | --- | --- |
| Apr. 1, 2005 | Mar. 31, 2006 | 2,103.60 |
| Jan. 1, 2006 | Dec. 31, 2006 | 1,679.10 |
| Jan. 1, 2007 | Dec. 31, 2007 | 631.25 |
| Jan. 1, 2008 | Dec. 31, 2008 | 358.50 |

JCHA maintained a Wells Fargo bank account with an account number ending in 6759 (JCHA's account). Petitioner had sole access to JCHA's account. After petitioner ignored information document requests from the Internal Revenue Service (IRS), Revenue Agent Kevan Mullins summoned bank statements for the years in issue for JCHA's account and performed a bank deposits analysis on the

**[*5]** account.  The bank deposits analysis, after a correction, shows that petitioner made the following withdrawals, electronic deposits, paper deposits, and net withdrawals from JCHA's account:

|  | 2005 | 2006 | 2007 | 2008 |
|---|---|---|---|---|
| Withdrawals | $138,860.91 | $113,812.93 | $94,953.75 | $126,561.11 |
| Electronic deposits | 24,537.18 | 10,298.96 | 26,375.71 | 26,309.95 |
| Paper deposits | -0- | -0- | -0- | 11,669.40 |
| Net withdrawals | 114,323.73 | 103,513.97 | 68,578.04 | 88,581.76 |

On April 5, 2010, petitioner submitted to the IRS Forms 1120, U.S. Corporation Income Tax Return (corporate income tax returns), for JCHA's taxable years ending March 31, 2004, 2005, 2006, 2007, and 2008.  On its corporate income tax returns JCHA reported paying officer's compensation of $9,350, $66,476, $55,689, $19,794, and $78,011 for its taxable years ending March 31, 2005, 2006, 2007, 2008, and 2009, respectively.

B.  Petitioner's Gambling Business

Petitioner has played poker regularly since 1995, and during the years in issue he was in the trade or business of gambling.  In 2002 petitioner won an event at the World Series of Poker, and he feels that he can compete against the world's top players.

[*6] During the years in issue petitioner played online poker and casino poker. Petitioner played online poker at Pokerstars.com and Partypoker.com. Petitioner played casino poker in Las Vegas, Nevada.

Petitioner had the following gross receipts from his gambling business:

|  | 2005 | 2006 | 2007 | 2008 |
|---|---|---|---|---|
| Pokerstars.com | $147,353.95 | $149,139.15 | $95,219.91 | $55,363.83 |
| Partypoker.com | 7,065.00 | -0- | -0- | -0- |
| Casino | 3,965.00 | -0- | 149,687.00 | 2,769.00 |
| Gross receipts | 158,383.95 | 149,139.15 | 244,906.91 | 58,132.83 |

Petitioner's gross receipts from playing casino poker in 2007 include $4,740 from RIO All-Suite Hotel & Casino (Rio Casino); $3,987 from Rio Casino; $136,695 from Grand Sierra Resort & Casino on February 27, 2007; and $4,265 from Bellagio.

Petitioner had the following losses from his gambling business:

|  | 2005 | 2006 | 2007 | 2008 |
|---|---|---|---|---|
| Pokerstars.com | $163,241.09 | $135,332.50 | $100,364.90 | $72,464.82 |
| Partypoker.com | 9,200.00 | Unknown | -0- | -0- |
| Casino | 9,035.00 | Unknown | Unknown | Unknown |
| Losses | 181,476.09 | Unknown | Unknown | Unknown |

[*7] Petitioner had the following expenses from his gambling business in 2006:

| | |
|---|---|
| Flights | $1,149 |
| Hotels | 2,756 |
| Car rentals | 1,298 |
| Parking | -0- |
| Total expenses | 5,203 |

### C.    Petitioner's Laundromat Business

On October 31, 2001, petitioner purchased a laundromat in San Francisco, California. Petitioner employed one individual at the laundromat. Petitioner kept handwritten logs for the laundromat during the years in issue. In February 2008 petitioner closed the laundromat.

The laundromat had gross sales or receipts of $36,312, $32,704.25, $38,096.75, and $3,355.25 for 2005, 2006, 2007, and 2008, respectively.

### III.    Petitioner's Tax Reporting

On February 29, 2008, petitioner filed his 2005 Form 1040, U.S. Individual Income Tax Return (income tax return). On December 8, 2008, petitioner filed his 2006 income tax return. Petitioner failed to file timely his 2007 or 2008 income tax return. On November 9, 2009, the IRS prepared substitutes for returns pursuant to section 6020(b) for 2007 and 2008. On March 7, 2010, petitioner submitted to the IRS a 2007 income tax return. On January 18, 2011, the IRS prepared updated substitutes for returns for 2007 and 2008, which were used in

[*8] preparation of the notice of deficiency.  In February 2012 petitioner submitted to the IRS a 2008 income tax return.

Petitioner's submitted income tax returns reported total income of -$5,889, $2,779, $31,985, and -$887 for 2005, 2006, 2007, and 2008, respectively.

Petitioner did not report the receipt of any wage income during the years in issue.  Petitioner attached Schedules C to his 2005-08 income tax returns that showed net profit or loss from the following businesses:  (1) a soil engineering consultant business; (2) a gambling business; and (3) a laundromat business.

A.    Soil Engineering Consultant Schedules C

On Schedules C attached to his income tax returns for the years in issue petitioner reported his soil engineering consultant business' gross income, total expenses, and net profit as follows:

|  | 2005 | 2006 | 2007 | 2008 |
|---|---|---|---|---|
| Gross income | $50,954 | $59,314 | $8,075 | $84,234 |
| Total expenses | -0- | -0- | -0- | -0- |
| Net profit | 50,954 | 59,314 | 8,075 | 84,234 |

B.    Gambling Schedules C

On Schedules C attached to his income tax returns for the years in issue petitioner reported the gambling business's gross income, total expenses, and net loss as follows:

| [*9] | 2005 | 2006 | 2007 | 2008 |
|---|---|---|---|---|
| Gross income | $9,700 | $19,762 | -0- | -0- |
| Total expenses | 49,561 | 51,867 | $15,413 | $45,376 |
| Net loss | (39,861) | (32,105) | (15,413) | (45,376) |

C.      Laundromat Schedules C

On Schedules C attached to his income tax returns for the years in issue

petitioner reported the laundromat business's gross income, total expenses, and net

loss as follows:

| | 2005 | 2006 | 2007 | 2008 |
|---|---|---|---|---|
| Gross income | $30,201 | $25,841 | $35,578 | $3,330 |
| Total expenses | 47,183 | 50,271 | 66,301 | 42,151 |
| Net loss | (16,982) | (24,430) | (30,723) | (38,821) |

IV.   Notice of Deficiency

The notice of deficiency included the following:

> The contact person can access your tax information and help
> you get answers.  You also have the right to contact the office of the
> Taxpayer Advocate.  Taxpayer Advocate assistance is not a substitute
> for established IRS procedures such as the formal appeals process.
> The Taxpayer Advocate is not able to reverse legally correct tax
> determinations, nor extend the time fixed by law that you have to file
> a petition in the U.S. Tax Court.  The Taxpayer Advocate can,
> however, see that a tax matter that may not have been resolved
> through normal channels gets prompt and proper handling.  If you
> want Taxpayer Advocate assistance, please contact the Taxpayer
> Advocate for the IRS office that issued this notice of deficiency.

**[\*10]** Please visit our website at www.irs.gov/advocate/content/0,,id=150972,00.html for the Taxpayer Advocate telephone numbers and addresses for this location.

OPINION

I.      Preliminary Matters

Five months before trial the Court's standing pretrial order was served along with the notice setting case for trial. The standing pretrial order includes the following:

> **2. Trial Exhibits.** It is ORDERED that any documents or materials which a party expects to use (except solely for impeachment) if the case is tried, but which are not stipulated, shall be identified in writing and exchanged by the parties at least 14 days before the first day of the trial session. The Court may refuse to receive in evidence any document or material that is not so stipulated or exchanged, unless the parties have agreed otherwise or the Court so allows for good cause shown.

More than four months after trial, and more than one month after the parties filed their opening briefs, petitioner filed a motion to reopen the record. Respondent objected to reopening the record and also to the admission of additional documentary evidence without an evidentiary hearing. Petitioner's motion was denied for the following reasons.

Reopening the record for the submission of additional evidence lies within the discretion of the Court. Butler v. Commissioner, 114 T.C. 276, 286-287

**[*11]** (2000) (citing <u>Zenith Radio Corp. v. Hazeltine Research, Inc.</u>, 401 U.S. 321, 331 (1971)). The policy of the Court is to try all of the issues raised in a case in one proceeding to avoid piecemeal and protracted litigation. <u>Markwardt v. Commissioner</u>, 64 T.C. 989, 998 (1975). Petitioner was given ample opportunity to provide evidence both before and at trial, and he failed to introduce the additional evidence that he now wishes to introduce. Moreover, petitioner failed to abide by the Court's standing pretrial order that requires all documents that a party expects to use at trial be provided to the other party at least 14 days in advance of the trial calendar. Under such circumstances, we declined to bifurcate the trial to receive additional evidence.

Petitioner did not cooperate with respondent's examination or with the Appeals Office. Petitioner refused to turn over requested records; he ignored information document requests, and the IRS had to resort to a court order to gain access to petitioner's Pokerstars.com records. Petitioner's failure to cooperate with respondent in producing requested documents before trial is an additional ground for denying petitioner's motion. <u>See</u> <u>Tinnerman v. Commissioner</u>, T.C. Memo. 2006-250. Reopening the record after the opening briefs were filed would necessitate a further hearing and would prejudice respondent and would

**[\*12]** unreasonably protract the proceedings.  Such unusual relief is not justified in this case.

II.     Validity of the Notice of Deficiency

        A.     Missing Taxpayer Advocate Information

Petitioner contends that the notice of deficiency is invalid because the inclusion of a Web site address where the address and telephone number of the local office of the taxpayer advocate may be found does not comply with the applicable statute.  See sec. 6212(a).  We addressed this contention in a related case petitioner brought on behalf of JCHA and held that the failure of a notice of deficiency to include the address and telephone number of the local office of the taxpayer advocate does not invalidate the notice where the taxpayer has not shown that the taxpayer was prejudiced by that failure.  See John C. Hom & Assocs., Inc. v. Commissioner, 140 T.C. __, __-__ (slip op. at 5-8) (May 7, 2013); see also Elings v. Commissioner, 324 F.3d 1110, 1112-1113 (9th Cir. 2003) (nonprejudicial, minor and technical errors do not invalidate a notice of deficiency).  As in John C. Hom & Assocs., Inc. v. Commissioner, 140 T.C. at __ (slip op. at 5-8), and for the same reasons, petitioner has not shown that he was prejudiced by the failure of the notice of deficiency to include the address and

**[\*13]** telephone number of the local office of the taxpayer advocate. We therefore conclude that the notice of deficiency was valid.

      B.      <u>Respondent's Alleged Failure To Examine Petitioner's 2007 Return</u>

Petitioner contends that the notice of deficiency is invalid with respect to 2007 because respondent failed to examine the 2007 income tax return that he claims he filed on March 7, 2010. Petitioner cites <u>Scar v. Commissioner</u>, 814 F.2d 1363, 1368 (9th Cir. 1987) (holding that a notice of deficiency was invalid where the Commissioner did not examine the taxpayer's return and the notice of deficiency referred to a transaction that was unrelated to the taxpayer), <u>rev'g</u> 81 T.C. 855 (1983), but there is no similarity between <u>Scar</u> and this case. To support his contention petitioner argues that the IRS did not accept his 2007 income tax return but instead filed a substitute for return on January 18, 2011. However, petitioner's account transcripts show that petitioner's 2007 income tax return was not filed because the IRS had already prepared a substitute for return for 2007 on November 9, 2009, before petitioner submitted a return. The notice of deficiency was sent after the IRS examined the initial substitute for return and considered any records that petitioner provided. We therefore conclude that the notice of deficiency is valid with respect to 2007.

[*14] III.     Burden of Proof

Generally, the taxpayer bears the burden of proof.  See Rule 142(a); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).  Section 7491(a) shifts to the Commissioner the burden of proof with respect to any factual issue if the taxpayer introduces credible evidence and has complied with substantiation requirements, has maintained required records, and has cooperated with reasonable requests for witnesses, information, and documents.  See sec. 7491(a)(1) and (2).  Petitioner has not satisfied the requirements of section 7491(a)(1) and (2).

Petitioner failed to maintain required records or to provide them to respondent.  See sec. 6001.  Respondent was therefore authorized to reconstruct petitioner's income by any method that clearly reflects income.  See sec. 446(b); Petzoldt v. Commissioner, 92 T.C. 661, 693 (1989); sec. 1.446-1(b)(1), Income Tax Regs.  The bank deposits method is a permissible method of reconstructing income.  See Clayton v. Commissioner, 102 T.C. 632, 645 (1994).  Respondent's bank deposits analysis shows that petitioner withdrew for personal use significant amounts from JCHA's account that he did not report as wages.  The withdrawals from JCHA's account are prima facie evidence of income, and petitioner has the burden of showing the nontaxable nature of established receipts.  See Tokarski v.

[*15] <u>Commissioner</u>, 87 T.C. 74, 77 (1986); <u>Estate of Mason v. Commissioner</u>, 64 T.C. 651, 656-657 (1975), <u>aff'd</u>, 566 F.2d 2 (6th Cir. 1977).  Petitioner bears the burden of establishing that the unreported income adjustments were arbitrary or erroneous.  See <u>Hardy v. Commissioner</u>, 181 F.3d 1002, 1004 (9th Cir. 1999), <u>aff'g</u> T.C. Memo. 1997-97; <u>Clayton v. Commissioner</u>, 102 T.C. at 645.

Citing <u>Cohen v. Commissioner</u>, 266 F.2d 5, 11 (9th Cir. 1959), <u>remanding</u> T.C. Memo. 1957-172, petitioner contends that respondent's disallowance of petitioner's claimed gambling losses in their entirety rendered the deficiency determination "arbitrary or erroneous", thereby shifting the burden of proof to respondent.  However, respondent disallowed petitioner's claimed gambling losses because petitioner's gambling records did not clearly show petitioner's gambling losses and petitioner was uncooperative.  Respondent accurately determined petitioner's gambling income but disallowed petitioner's claimed losses because petitioner failed to substantiate them.  By contrast, in <u>Cohen v. Commissioner</u>, 266 F.2d at 9-11, the court held that the Commissioner failed to determine accurately the taxpayer's income in the first instance because the Commissioner included in the taxpayer's income amounts that the taxpayer held for third parties.

**[*16]** IV.    <u>Unreported Wage Income From JCHA</u>

Petitioner made net withdrawals from JCHA's account of $114,323.73, $103,513.97, $68,578.04, and $88,581.76 in 2005, 2006, 2007, and 2008, respectively.  Respondent determined that these amounts were constructive wages to petitioner and allowed JCHA to deduct the difference between these amounts and the amounts that it reported on its returns.  Petitioner introduced no credible evidence showing that any of the withdrawals he made from JCHA's account were for JCHA's expenses.  Instead, petitioner contends that these net withdrawals were repayments of loans he made to JCHA in 2000 and 2001.

"In the context of taxation, courts have defined a loan as 'an agreement, either express or implied, whereby one person advances money to the other and the other agrees to repay it upon such terms as to time and rate of interest, or without interest, as the parties may agree.'"  <u>Calloway v. Commissioner</u>, 135 T.C. 26, 36-37 (2010) (quoting <u>Welch v. Commissioner</u>, 204 F.3d 1228, 1230 (9th Cir. 2000), <u>aff'g</u> T.C. Memo. 1998-121), <u>aff'd</u>, 691 F.3d 1315 (11th Cir. 2012).  For a transaction to be a bona fide loan the parties must have actually intended to establish a debtor-creditor relationship at the time the funds were advanced.  <u>Fisher v. Commissioner</u>, 54 T.C. 905, 909-910 (1970).  "Whether a bona fide

[*17] debtor-creditor relationship exists is a question of fact to be determined upon a consideration of all the pertinent facts in the case." Id. at 909.

Petitioner contends that he lent money to JCHA in 2000 and 2001 and that the amounts he withdrew from JCHA during the years in issue were repayments of those loans. However, petitioner introduced records from JCHA that purport to show that, from May 2002 until December 2005, petitioner borrowed $234,151.92 from, and repaid $164,066.92 to JCHA. These records do not reflect any of the amounts that petitioner claims he lent to JCHA in 2000 and 2001. Moreover, petitioner admitted at trial that (1) he did not execute a note to memorialize the purported loan, (2) JCHA did not pay interest on the purported loan, and (3) there was no repayment schedule on the purported loan. We are not persuaded that a bona fide debtor-creditor relationship existed between petitioner and JCHA. We conclude that any amounts that petitioner transferred to JCHA in 2000 and 2001 were capital contributions and not loans.

Whether personal use of corporate property constitutes constructive dividends, wages (i.e., compensation for services), or something else is a question of fact. Loftin & Woodard, Inc. v. United States, 577 F.2d 1206, 1242 (5th Cir. 1978); Goldstein v. Commissioner, 298 F.2d 562, 566 (9th Cir. 1962), aff'g T.C. Memo. 1960-276. Petitioner failed to introduce credible evidence showing that

**[*18]** respondent's characterization of the amounts that he withdrew from JCHA's account as wages was erroneous. The evidence of petitioner's services to JCHA, discussed further below, suggests strongly that the amounts withdrawn were compensation for his services as an engineer and as an officer of the corporation. We sustain respondent's determination on this issue.

V.    Whether Petitioner Was an Employee of JCHA

Respondent determined that petitioner was an employee of JCHA during the years in issue. Under section 3121(d)(2), the term "employee" includes any individual who has the status of an employee under the common law. Paragraphs (1), (3), and (4) of section 3121(d) describe other individuals who are considered employees regardless of their status under the common law. Individuals described within those paragraphs are commonly referred to as "statutory" employees. See Joseph M. Grey Pub. Accountant, P.C. v. Commissioner, 119 T.C. 121, 126 (2002), aff'd, 93 Fed. Appx. 473 (3d Cir. 2004).

One category of statutory employee is defined as "any officer of a corporation". Sec. 3121(d)(1). Section 31.3121(d)-1(b), Employment Tax Regs., clarifies the scope of section 3121(d) in determining the employee status of corporate officers as follows: "Generally, an officer of a corporation is an employee of the corporation. However, an officer of a corporation who as such

**[*19]** does not perform any services or performs only minor services and who neither receives nor is entitled to receive, directly or indirectly, any remuneration is considered not to be an employee of the corporation." Consequently, if an officer performs substantial services for a corporation and receives remuneration for those services, that officer is an employee. See Veterinary Surgical Consultants, P.C. v. Commissioner, 117 T.C. 141, 145 (2001), aff'd sub nom. Yeagle Drywall Co. v. Commissioner, 54 Fed. Appx. 100 (3d Cir. 2002).

Petitioner contends that he was not an officer of JCHA because its corporate powers were suspended on March 1, 2004, for failure to pay State income taxes, see Cal. Rev. & Tax. Code sec. 23302 (West 2004), and that it therefore lacked the power to appoint officers under California law. However, petitioner has not cited any authoritative California law to support his contention that he could not be an officer of JCHA while its powers, rights, and privileges were suspended. During the years in issue, he and JCHA continued to conduct business in the same manner as before.

The parties stipulated that petitioner is the president and chief executive officer of JCHA, and petitioner testified that no other person has served as an officer of JCHA. Moreover, on April 5, 2010, petitioner signed JCHA's corporate income tax returns for its taxable years ending March 31, 2004, 2005, 2006, 2007,

[*20] and 2008, even though its corporate powers, rights, and privileges were then suspended.  See sec. 6062 (providing that corporate returns must be signed by an officer of the corporation).  We conclude, therefore, that petitioner was an officer of JCHA during the years in issue.

Petitioner performed substantial services as an officer of JCHA.  In particular, petitioner admits that he managed the day-to-day operations of JCHA.  Accordingly, petitioner was a "statutory" employee pursuant to section 3121(d)(1) because he was an officer of JCHA who provided substantial managerial services as an officer of the corporation.  See Van Camp & Bennion v. United States, 251 F.3d 862, 865-866 (9th Cir. 2001).

VI.    Gambling Losses and Expenses

A.    Section 165(d)

Section 162(a) allows deductions for all ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business.  However, section 165(d) applies to preclude deduction of wagering losses against other income, even if the taxpayer is engaged in the trade or business of gambling.  See Boyd v. United States, 762 F.2d 1369, 1372-1373 (9th Cir. 1985); Mayo v. Commissioner, 136 T.C. 81, 85 (2011).  As we explained in Mayo v.

[*21] Commissioner, 136 T.C. at 85-90, this result is consistent with the holding of Commissioner v. Groetzinger, 480 U.S. 23 (1987).

The parties stipulated that petitioner was in the trade or business of gambling during the years in issue. Accordingly, petitioner is entitled to deduct his gambling losses to the extent of his gambling gains. See secs. 162(a), 165(d); Mayo v. Commissioner, 136 T.C. at 85.

Petitioner contends that United States v. Hughes Props., Inc., 476 U.S. 593 (1986), treated wagering losses by a casino engaged in the trade or business of gambling as ordinary and necessary expenses under section 162(a) and not as wagering losses under section 165(d). But Hughes Props., 476 U.S. at 601, did not discuss whether wagering losses are subject to section 165(d) but, rather, whether the taxpayer had incurred the wagering loss during the year for which it was claimed. Accordingly, petitioner's contention is misplaced.

B.     Additional Gambling Losses

Petitioner failed to introduce evidence substantiating additional gambling losses during the years in issue. Petitioner contends, however, that we should estimate and allow additional gambling losses.

Where a taxpayer establishes that he or she incurred a deductible expense but is unable to substantiate the precise amount, we may, bearing heavily against

[*22] the taxpayer who has failed to maintain records, approximate the amount of the expense. See Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). However, we must have sufficient evidence upon which to make a reasonable estimate to apply the Cohan rule. See Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985).

Respondent conceded on brief that petitioner received no gross receipts from online poker on Partypoker.com and from casino poker in 2006. Thus there are no gains from online poker on Partypoker.com to be offset by losses from that activity in 2006, and additional losses from gambling will not be allowed for 2006.

Petitioner had gross receipts from casino poker of $149,687 and $2,769 in 2007 and 2008, respectively. Petitioner introduced no evidence showing how often he played casino poker in 2007 and 2008. However, petitioner's 2007 gross receipts from casino poker were won on four dates in 2007, including $136,695 at Grand Sierra Casino on February 27, 2007. This suggests that petitioner's casino poker earnings were won in relatively few events. Petitioner was a skillful and seemingly successful poker player. Unlike cases involving slot machine players with continuous play but occasional jackpots, petitioner did not necessarily suffer any losses from playing casino poker in 2007 or 2008. Cf. Briseno v. Commissioner, T.C. Memo. 2009-67. We therefore have no basis upon which to

[*23] estimate petitioner's gambling losses for those years. See Vanicek v. Commissioner, 85 T.C. at 742-743. Accordingly, petitioner is not entitled to deduct any additional gambling losses for 2007 and 2008.

### C. Additional Gambling Expenses

#### 1. Transportation and Lodging

Petitioner introduced three summary exhibits to substantiate his gambling business's transportation and lodging expenses for 2005, 2007, and 2008. However, petitioner failed to introduce credible evidence substantiating any of the purported transportation and lodging expenses for 2005, 2007, or 2008. Petitioner's summary exhibits are not corroborated or reliable. Section 274(d) establishes a heightened substantiation requirement for certain types of expenses, and we may not estimate the transportation and lodging expenses for 2005, 2007, and 2008. See Sanford v. Commissioner, 50 T.C. 823, 827-828 (1968), aff'd, 412 F.2d 201 (2d Cir. 1969). Accordingly, petitioner is not entitled to deduct any of his gambling business's purported transportation and lodging expenses for 2005, 2007, and 2008.

#### 2. Rake and Tournament Entry Fees

Petitioner contends that he is entitled to deduct rake and tournament entry fees as gambling expenses. Respondent concedes that section 165(d) does not

[*24] apply to rake and tournament entry fees but contends that petitioner has not proven that he incurred any such fees.

Petitioner testified that he incurred rake fees of $2 to $4 per hand to play poker at Pokerstars.com. However, petitioner failed to introduce credible evidence corroborating his testimony. Petitioner's testimony standing alone is not reliable, and we have no basis upon which to estimate petitioner's rake fee expenses for the years in issue. See Vanicek v. Commissioner, 85 T.C. at 742-743. Accordingly, petitioner is not entitled to deduct any rake fees.

The record contains copies of receipts issued to petitioner by various casinos. The receipts show that petitioner paid tournament entry fees totaling $595 and $20 in 2005 and 2006, respectively. However, petitioner has not shown that the tournament entry fees for 2005 were not included in the stipulated gambling losses for that year. Petitioner introduced no receipts for tournament entry fees for 2007 and 2008. However, the record shows that petitioner played casino poker in at least four tournaments in 2007 and in at least one tournament in 2008. Using the tournament entry fees that petitioner paid in 2005 and 2006, we estimate that petitioner paid tournament entry fees of $160 and $40 in 2007 and 2008, respectively. We have no basis to estimate any additional tournament fees for the years in issue. See id. We conclude, therefore, that (1) $595 of the

[*25] stipulated gambling loss for 2005 is not subject to the section 165(d) limitation; and (2) and petitioner is entitled to deduct $20, $160, and $40 in tournament entry fees for 2006, 2007, and 2008, respectively.

VII.   Laundromat Expenses and Depreciation

In the notice of deficiency respondent allowed the reported expenses for petitioner's laundromat business for 2005 and 2006 and allowed the following expenses for 2007 and 2008:

| Expense | 2007 | 2008 |
|---|---|---|
| Other | $31,580 | $5,458.00 |
| Depreciation and sec. 179 | 10,457 | 871.42 |

Petitioner failed to address in his opening brief the issue of whether he was entitled to deduct additional expenses for 2007 and 2008 with respect to his laundromat business.  We, therefore, deem these issues to be conceded or abandoned.  See Rules 123(a) and (b), 151(e)(5); Lunsford v. Commissioner, 117 T.C. 183, 187 n.6 (2001).

In any event, petitioner failed to satisfy his burden of proof on these issues. Petitioner offered only a summary exhibit that purports to show expenses totaling $57,010.31 for his laundromat business in 2007.  Petitioner also introduced various invoices and canceled checks to substantiate his laundromat expenses for 2007 and 2008.  However, the invoices and canceled checks do not corroborate

**[*26]** petitioner's summary exhibit, and the summary exhibit without corroboration is unreliable.  The invoices and canceled checks do not otherwise show that petitioner is entitled to deduct any of the laundromat business's expenses for 2007 and 2008 in amounts greater than respondent allowed.  He did not introduce any evidence showing that he is entitled to deduct depreciation or section 179 expenses for 2007 or 2008 with respect to his laundromat business in amounts greater than respondent allowed.  Accordingly, petitioner is not entitled to deduct additional laundromat business expenses, depreciation, or section 179 expenses for 2007 and 2008.

VIII.  Section 6662(a) Penalty

Respondent determined that petitioner is liable for an accuracy-related penalty under section 6662(a) for 2005 and 2006.  Section 6662(a) and (b)(1) and (2) provides for a penalty of 20% on the portion of an underpayment of tax (1) due to negligence or disregard of rules or regulations or (2) attributable to a substantial understatement of income tax.  Section 6662(c) defines "negligence" as any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code, and "disregard" means any careless, reckless, or intentional disregard.  The evidence of failure to maintain records, unreported income, and

[*27] unsubstantiated loss and expense deductions claimed by petitioner is sufficient to prove negligence and satisfies respondent's burden of production.

Whether applied because of negligence or disregard of rules or regulations or a substantial understatement of income tax, the accuracy-related penalty is not imposed with respect to any portion of the underpayment as to which the taxpayer acted with reasonable cause and in good faith. See sec. 6664(c)(1). Whether the taxpayer acted with reasonable cause and in good faith depends upon all the pertinent facts and circumstances. See sec. 1.6664-4(b)(1), Income Tax Regs. Petitioner has the burden of proving reasonable cause and good faith. See Higbee v. Commissioner, 116 T.C. 438, 449 (2001). He has not done so here.

We have considered the other arguments of the parties. They are irrelevant, lack merit, or are unnecessary to the result reached. To reflect respondent's concessions and the foregoing,

Decision will be entered

under Rule 155.