T.C. Memo. 2016-135

UNITED STATES TAX COURT

JOHN M. PROBANDT, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 9539-06.                    Filed July 21, 2016.

<u>Steven Ray Mather</u> and <u>Lydia Turanchik</u>, for petitioner.

<u>Michael K. Park</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GALE, <u>Judge</u>:  Respondent determined the following deficiencies, additions to tax, and penalties with respect to petitioner's 2001 and 2002 Federal income tax:

| [*2] Year | Deficiency | Addition to tax sec. 6651(a)(1) | Penalty sec. 6662(a) |
|---|---|---|---|
| 2001 | $525,164 | $131,291 | $105,033 |
| 2002 | 230,125 | 57,460 | 46,025 |

Following concessions by the parties,[1] the issues for decision are:

(1) whether petitioner received unreported income in 2001 and 2002 from A&G Precision Parts, LLC (A&G), a partnership in which he was a partner;

(2) whether petitioner is entitled to deduct expenses reported on Schedules C, Profit or Loss From Business, for 2001 and 2002;

(3) whether petitioner is liable for an addition to tax under section 6651(a)(1)[2] for failure to timely file returns for 2001 and 2002; and

---

[1]The parties have stipulated that petitioner received unreported dividend and interest income of $58 and $7,075, respectively, for 2001, and $16 and $1,812, respectively, for 2002, as reflected on Forms 1099-DIV, Dividends and Distributions, and Forms 1099-INT, Interest Income, as determined in the notice of deficiency. Of these amounts, $6,858 and $1,812 were interest from A&G Precision Parts, LLC, for 2001 and 2002, respectively. Respondent concedes that petitioner did not realize capital gains in 2001 and 2002 of $970,183 and $41,986, respectively, as determined in the notice of deficiency but instead realized short-term capital losses in 2001 and 2002 of $63,338 and $5,777, respectively, entitling petitioner to capital loss deductions of $3,000 for both years and capital loss carryovers of $60,338 to 2002 and $63,115 to 2003.

[2]All section references are to the Internal Revenue Code of 1986, as amended and in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. All dollar amounts have been rounded to

(continued...)

**[\*3]** (4) whether petitioner is liable for accuracy-related penalties under section 6662(a) and (b)(1) and (2) for 2001 and 2002.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found.  We incorporate by this reference the stipulation of facts and the accompanying exhibits.  Petitioner resided in Washington State at the time he filed his petition.

I.  <u>Petitioner's Education and Professional Experience</u>

Petitioner received a degree in business administration in the mid-1970s. He worked initially for an accounting firm and then for a public company auditing financial statements.  For approximately 10 years during the 1980s petitioner worked for a securities brokerage firm.  In the first half of the 1990s petitioner worked at two money management firms managing investments for clients.  In approximately 1995 or 1996 petitioner began investing in small startup companies for his own account.  Around 1998 petitioner discovered one such company.  He became interested in acquiring A&G Precision Parts (the predecessor of A&G), a company headquartered near Portland, Oregon, because it had good cashflow and offered him an opportunity to earn a salary.

---

[2](...continued)
the nearest dollar.

[*4] II.     A&G

Before and during the years at issue, A&G developed parts and other prototype components for semiconductor manufacturers.  Sometime in 1998 petitioner and four other individuals acquired A&G.  Petitioner and the other four individuals were designated 20% partners of A&G; petitioner became managing and tax matters partner while the remaining partners functioned as passive investors.  During the years at issue A&G had five partners, all of whom were individuals.  Petitioner made all financial and sales decisions for A&G and frequently traveled to meet potential A&G clients in an effort to develop A&G's business relationships.

Sometime after petitioner and his partners acquired A&G, two individuals were hired to manage A&G's day-to-day operations.  One of them, Mark Herz, was initially hired as A&G's vice president and operations manager of its production facility.  He became president sometime around 2001 while still overseeing operations.

A&G maintained approximately $30,000 in an account for use in purchasing equipment at auction.  In 2001 these funds were transferred to petitioner to purchase equipment on behalf of A&G.  Petitioner did not purchase any equipment at auction in 2001 or thereafter.

**[*5]** III.    Schedule C Business

During 2001 and 2002 petitioner explored business opportunities in China and traveled there extensively.  His goal was to acquire exclusive rights to distribute certain Chinese manufactured products in the United States.  To that end, petitioner often spent a great deal of time developing business relationships with the executives of target companies over meals.  He conducted these activities for himself and not as part of A&G's semiconductor parts manufacturing and sales.

IV.    Petitioner's Financial Institutions and Records During 2001 and 2002

Petitioner maintained two accounts at Bank of America during 2001 and 2002.  The first was a joint checking account that he held with his then spouse; the second was a business checking account in the name of Probandt Associates that he maintained to support his business endeavors in China.  In addition to the business checking account at Bank of America, petitioner maintained a credit card account at Capital One that he used to pay for his travels to, and expenses incurred in, China.[3]

---

[3]Petitioner's counsel represented at trial that both she and respondent had issued subpoenas to Capital One for petitioner's credit card account statements, but were unsuccessful in obtaining any such records because Capital One, though apparently acknowledging that petitioner had been a customer there, could not

(continued...)

[*6]   Petitioner kept handwritten records of the travel and meals and entertainment expenses he paid in 2001 and 2002.  Petitioner recorded the date, amount, and business purpose of each of his travel, printing, and consulting expenditures in a spiral notebook.  Petitioner similarly noted the date, amount, and business purpose of each of his meals and entertainment expenses in a day timer.

Petitioner leased a storage unit in which he placed his handwritten financial records and other personal effects for safekeeping during his travels; he prepaid two years' rent on the unit before he left on a trip to China sometime in 2005.  Petitioner received notice in early December 2005 while in China that the Portland Development Commission had acquired the site of the storage facility by eminent domain and that he had to arrange to move the contents of his storage unit to another storage unit by December 31, 2005, or risk their destruction.  The Portland Development Commission offered petitioner (and other unit lessees) assistance including free moving services and the identification of a mover and a new storage facility that would arrange for the moving and re-storage of his contents, respectively, without petitioner's needing to appear before either in person, so

---

[3](...continued)
find them.  Given respondent's counsel's acquiescence in these representations, we take it as established that petitioner had a Capital One credit card account through which he paid expenses of his Schedule C business.

[*7] long as he provided a power of attorney to another individual to act on his behalf and provided the authorized person with his unit key and access code. Petitioner was unable to make the arrangements in time, and as a consequence the contents of his storage unit were destroyed.[4]

V.    Tax Returns

    A.    A&G's Returns

A&G filed Forms 1065, U.S. Return of Partnership Income, for 2001 and 2002, which petitioner signed as tax matters partner.  These returns were prepared by a certified public accountant.  For 2001 A&G claimed total deductions of $2,061,195, including travel expense deductions of $39,946 and meals and entertainment expense deductions of $5,335.  For 2002 A&G claimed total deductions of $2,470,500, including travel expense deductions of $65,899 and meals and entertainment expense deductions of $10,275.

---

[4]Petitioner's testimony concerning the matters outlined in this paragraph was corroborated by contemporaneous emails between him and a representative of a firm hired by the Portland Development Commission to assist storage unit lessees in moving their stored materials.  Respondent raised a hearsay objection to the emails, and they were admitted for limited nonhearsay purposes.  However, on brief respondent makes extensive use of the emails for the truth of the matters asserted therein.  He has therefore waived the hearsay objection.  Moreover, petitioner's statements in the emails are not hearsay because they support his explanation of the reason he lacked substantiation, see Fed. R. Evid. 801(d)(1), and the statements of his email correspondent are admissible to place petitioner's statements in context.

[*8]   A&G's 2001 and 2002 returns included Schedules K-1, Partner's Share of Income, Credits, Deductions, etc., for each of the partners.  Petitioner's Schedule K-1 for 2001 reported $81,322 as his distributive share of ordinary income, $135,000 in guaranteed payments, $125,000 in cash distributions, and nondeductible expenses of $1,067.[5]  Petitioner's Schedule K-1 for 2002 reported $234,067 as his distributive share of ordinary income, $145,000 in guaranteed payments, $25,000 in cash distributions, and nondeductible expenses of $2,055.[6] Petitioner received his Schedules K-1 before filing his individual Federal income tax returns for 2001 and 2002.

B.     Petitioner's Returns

Petitioner filed delinquent Federal income tax returns for 2001 and 2002 on April 10, 2004.  The returns were prepared by a certified public accountant. Petitioner did not provide the accountant with copies of his 2001 and 2002 Schedules K-1.  However, petitioner provided the accountant with summary sheets of his travel, meals and entertainment, printing, and consulting expenses derived from his handwritten records.

---

[5]A statement attached to the return explained that this entry represented the partner's share of the nondeductible portion of meals and entertainment expenses.

[6]A statement attached to the return explained that this entry represented the partner's share of the nondeductible portion of meals and entertainment expenses.

[*9]  A Schedule C was attached to petitioner's 2001 return.  The Schedule C reported that the principal business of the proprietorship was "Investments".  The entry for the business' name was left blank, and the address reported for the business was the same address that was reported for one of A&G's other partners (Walter Glass) on his Schedules K-1 for 2001 and 2002.  The 2001 Schedule C reported gross receipts of $231,000 and total expenses of $201,400 for a net profit of $29,600.  A similar Schedule C (with an identical principal business and address and with no entry for the business name) was attached to petitioner's 2002 return.  The 2002 Schedule C reported gross receipts of $201,900 and total expenses of $194,000 for a net profit of $7,900.  The 2001 and 2002 Schedules C reported the following expenses:

| Expense | 2001 | 2002 |
|---|---|---|
| Rent | $12,500 | --- |
| Travel | 87,900 | $103,000 |
| Meals & entertainment | [1]18,000 | 16,500 |
| Other--consulting | 65,000 | 50,000 |
| Other--printing | 18,000 | 24,500 |
| Total | 201,400 | 194,000 |

[1]The figures for meals and entertainment expenses have been subjected to the 50% limitation of sec. 274(n).

**[*10]** Petitioner did not attach a Schedule E, Supplemental Income and Loss, to his 2001 or 2002 return, nor did he report any partnership income on those returns.

## VI.   Notice of Deficiency

Respondent issued a notice of deficiency to petitioner with the following adjustments to petitioner's 2001 and 2002 returns:

(a) respondent determined that petitioner had failed to report his distributive shares and guaranteed payments from A&G[7] for 2001 of $216,322 (a $81,322 distributive share and $135,000 in guaranteed payments) and for 2002 of $379,067 (a $234,067 distributive share and $145,000 in guaranteed payments[8]);

(b) respondent disallowed, with the exception of the rent expense reported on petitioner's 2001 Schedule C, the deductions claimed for all expenses reported on petitioner's Schedules C for 2001 and 2002; and

---

[7]Because A&G had fewer than 10 partners, each of whom was an individual, and there is no indication that it otherwise elected under sec. 6231(a)(1)(B)(ii), A&G was a small partnership pursuant to sec. 6231(a)(1)(B). Thus, the provisions of secs. 6221 to 6234 do not apply to A&G.

[8]In the notice of deficiency, the 2002 figures for distributive share and guaranteed payments were reversed, but the parties have treated this reversal as a scrivener's error at trial and on brief.

**[*11]** (c) respondent determined that petitioner was liable for section 6651(a)(1) additions to tax and section 6662(a) and (b)(1) and (2) accuracy-related penalties for 2001 and 2002.

Petitioner filed a timely petition for redetermination.

OPINION

I.     Unreported Income

The parties are far apart in their dispute over unreported income for 2001 and 2002.  Petitioner filed a Schedule C for each year for an unnamed sole proprietorship.  The proprietorship's principal business was reported as "Investments".  The 2001 and 2002 Schedules C reported gross income of $231,000 and $201,900, respectively.  Respondent's position, reflected in the notice of deficiency, is that the foregoing gross income is from a Schedule C business that petitioner conducted separate and apart from his activities as the managing partner of A&G and that petitioner failed to report his distributive share of the partnership income and guaranteed payments from A&G as reflected on the Schedules K-1--$216,322 for 2001 and $379,067 for 2002.

Petitioner now concedes that these distributive share and guaranteed payment figures for his A&G partnership interest are--with one exception--correct but contends that the income he reported on the Schedule C for each year was his

[*12] partnership income from A&G. Specifically, petitioner contends he mistakenly believed that he was required to report only the <u>cash</u> he received from A&G each year. In petitioner's view, the cash he received from the partnership consisted of the guaranteed payments (i.e., salary) he received plus actual cash distributions. According to petitioner, the amounts he reported as gross receipts on the Schedules C each year consisted of guaranteed payments and distributed cash[9] from A&G. Petitioner did not, he contends, have any income from his business in those years, as the business he was individually conducting outside the partnership was a venture whereby he sought to secure the exclusive rights to distribute various Chinese manufactured goods within the United States. However, petitioner maintains that as of 2001 and 2002 no distribution contracts had been signed and as a result no income was generated from his business.

A comparison of petitioner's Schedules C and Schedules K-1 for the years at issue substantially corroborates his contentions. The total of petitioner's guaranteed payments and cash distributions from A&G in 2001 was $260,000. Petitioner reported Schedule C gross receipts for that year of $231,000. Petitioner

---

[9]Respondent does not contend that the cash distributions petitioner received from A&G in 2001 and 2002 exceeded his adjusted basis in his partnership interest and were therefore taxable. <u>See</u> sec. 731(a)(1). Instead, respondent contends that petitioner failed to report his distributive shares of partnership income and guaranteed payments from A&G for either year.

[*13] explains the $29,000 discrepancy as follows. He received a $30,000 disbursement from A&G in 2001 to buy used equipment for the partnership at auction. His search for appropriate equipment proved unsuccessful, and in 2002, after a discussion with one of his partners, it was agreed that he could keep the disbursement because cash distributions had been low that year. According to petitioner, the partnership's accountant who prepared the 2001 A&G return treated the disbursement as part of petitioner's guaranteed payments for 2001, but he had considered it to be income for 2002 when it was agreed he could keep it. Petitioner maintains that he reported the disbursement in his Schedule C gross receipts for that year. Petitioner describes the remaining $1,000 discrepancy for 2001 as most likely small sums that he had received from A&G for miscellaneous items. We note in this regard that petitioner's 2001 Schedule K-1 from A&G lists as an income item, immediately above his cash distributions, $1,067 in "nondeductible expenses".[10] If the amounts petitioner recalls and the "nondeductible expenses" item from the Schedule K-1 are treated as the same thing, the remaining discrepancy between petitioner's cash distributions from

---

[10]Respondent does not contend that petitioner was required to include in income the nondeductible expenses reflected on his Schedule K-1 for 2001. The $1,067 in nondeductible expenses was presumably reported on petitioner's Schedule K-1 for purposes of adjustments to petitioner's basis in his partnership interest pursuant to sec. 705(a)(2)(B).

[*14] A&G as reported on his 2001 Schedule K-1 and the gross receipts he reported on the Schedule C is only $67.[11]

A&G's president and operations manager, Mark Herz, corroborated petitioner's testimony concerning the $30,000. Mr. Herz confirmed in his testimony that an account for the purchase of used equipment at auction had been set up at A&G, that the account's $30,000 balance had been transferred to petitioner, and that he (Mr. Herz) did not know what happened to the funds. According to petitioner's 2002 Schedule K-1 from A&G, the total of his guaranteed payments and cash distributions from the partnership for that year was $170,000. Petitioner reported Schedule C gross receipts for that year of $201,900. When the $30,000 disbursement that petitioner claims he received from A&G in 2001 but did not treat as income until 2002 is accounted for, the discrepancy remaining between petitioner's cash distributions from A&G and the gross receipts he reported on his Schedule C is $1,900. Petitioner describes this remaining $1,900 as "little checks" he received from A&G for miscellaneous items, and we note that petitioner's 2002 Schedule K-1 from A&G lists as an income item, immediately above his cash distributions, $2,055 in "nondeductible

---

[11]In the case of the small checks, we are persuaded that petitioner's recall is faulty but that he was attempting to report his cash receipts to the best of his recollection.

[*15] expenses".[12]  If the "little checks" petitioner recalls and the "nondeductible expenses" item from the Schedule K-1 are treated as the same thing, the remaining discrepancy between petitioner's cash distributions from A&G as reported on his Schedule K-1 and the gross receipts he reported on the Schedule C is only $155.

We are persuaded that the near match of the Schedule K-1 items that represent A&G's cash disbursements to petitioner and the gross receipts he reported on Schedules C for 2001 and 2002 is too close to be mere coincidence. While incorrect as a matter of partnership taxation, petitioner's belief that he needed to report only cash distributions he received from the partnership and not undistributed partnership income was plausible.  Aside from the inference that might be drawn from petitioner's having reported gross receipts on Schedules C for each year, there is no evidence that the Chinese venture generated any income. There is also no evidence, such as a bank deposits analysis or spending well in excess of reported income, that would suggest petitioner underreported his income to the extent that respondent's position in the notice of deficiency necessarily implies.  On balance, considering all of the foregoing factors, we are persuaded on the preponderance of the evidence that the income petitioner reported on the

---

[12]As was the case for 2001, respondent does not contend that petitioner was required to include in income the nondeductible expenses reported on his Schedule K-1 for 2002.

[*16] Schedule C for each year represented cash distributions, guaranteed payments, and nondeductible expenses from A&G and was not gross proceeds generated by the Chinese distributorship venture petitioner conducted in his individual capacity. As a consequence, petitioner has demonstrated that the notice of deficiency is erroneous with respect to the issue of unreported income.

Given that there is no dispute that petitioner was engaged in an income-producing activity in connection with A&G during the years at issue, respondent has provided the necessary evidentiary foundation for his determination that petitioner failed to report income from that activity. Thus, the notice of deficiency was presumptively correct. See Weimerskirch v. Commissioner, 596 F.2d 358, 361-362 (9th Cir. 1979), rev'g 67 T.C. 672 (1977). However, the Court of Appeals for the Ninth Circuit, to which an appeal in this case would lie absent stipulation to the contrary, see sec. 7482(b)(1)(A), (2), has held that where the taxpayer demonstrates by a preponderance of the evidence that a notice of deficiency is arbitrary or erroneous, the notice of deficiency loses its presumptive correctness and the Commissioner then bears the burden of proof, see Keogh v. Commissioner, 713 F.2d 496, 501 (9th Cir. 1983), aff'g Davies v. Commissioner, T.C. Memo. 1981-438; Herbert v. Commissioner, 377 F.2d 65, 69 (9th Cir. 1966), rev'g T.C. Memo. 1964-223; Cohen v. Commissioner, 266 F.2d 5, 11 (9th Cir.

**[\*17]** 1959), remanding T.C. Memo. 1957-172; Stewart v. Commissioner, T.C. Memo. 1990-264.[13]  We follow the Court of Appeals for the Ninth Circuit's holdings here.  Golsen v. Commissioner, 54 T.C. 742 (1970), aff'd, 445 F.2d 985 (10th Cir. 1971).  For our purposes, it is sufficient that the preponderance of the evidence supports petitioner's claim that the $231,000 and the $201,900 he reported as gross income on his Schedules C for 2001 and 2002, respectively, constitute his guaranteed payments and other cash distributions from A&G for those years.  That being the case, the determinations in the notice of deficiency that petitioner failed to report $216,322 and $379,067 of income from A&G for 2001 and 2002, respectively, are not sustained.

Instead, petitioner having now conceded that he failed to correctly report his partnership taxable income from A&G for 2001 and 2002, we must redetermine the unreported income amounts by comparing what petitioner reported on his Schedules C with what his partnership taxable income from A&G was for those years.  See Cohen v. Commissioner, 266 F.2d at 11.

---

[13]Respondent treats petitioner's contention concerning a shift in the burden of proof to respondent as an invocation of sec. 7491(a).  However, petitioner has nowhere cited that section or shown that he is entitled to a shift in the burden of proof pursuant to it.  Instead, petitioner relies on Cohen v. Commissioner, 266 F.2d 5 (9th Cir. 1959), remanding T.C. Memo. 1957-172.

[*18] For 2001 petitioner reported gross income of $231,000 on his Schedule C. The Schedule K-1 that A&G issued to petitioner for 2001 reported his total taxable partnership income as $216,322, consisting of guaranteed payments of $135,000 and his distributive share of ordinary income of $81,322.[14] We therefore hold that petitioner did not have any unreported partnership income for 2001; instead he overstated his taxable income from A&G by $14,678. For 2002 petitioner reported gross income of $201,900 on his Schedule C. The Schedule K-1 that A&G issued to petitioner for 2002 reported his total taxable partnership income as $379,067, consisting of guaranteed payments of $145,000 and his distributive share of ordinary income of $234,067. We therefore hold that petitioner had $177,167 of unreported income from A&G for 2002.[15]

II.    Schedule C Expenses

The notice of deficiency disallowed for lack of substantiation the travel, meals and entertainment, consulting, and printing expenses that petitioner reported

---

[14]Petitioner contends that his 2001 Schedule K-1 from A&G overstates his total taxable income by $30,000, the amount of the disbursement from the auction account made to him in 2001 that he believes did not become taxable income until 2002. We disagree. The record does not demonstrate that this $30,000 made up any part of his guaranteed payments, and it would not enter into the calculation of his distributive share of the partnership's ordinary income.

[15]Petitioner concedes on brief that he understated his partnership income from A&G for 2002 in this amount.

**[\*19]** on his 2001 and 2002 Schedules C.[16]  While the notice of deficiency did not

disallow a rent expense deduction claimed for 2001, the parties tried that issue by

consent.  See Rule 41(b).

Deductions are a matter of legislative grace, and a taxpayer generally bears

the burden of proving that he is entitled to the deduction claimed.[17]  Rule 142(a);

INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co.

v. Helvering, 292 U.S. 435, 440 (1934).  The Commissioner bears the burden of

proof with respect to any matter that would increase the deficiency beyond that

determined in the notice of deficiency.  Rule 142(a); Truesdell v. Commissioner,

89 T.C. 1280, 1296 (1987).

Section 162(a) permits the deduction of ordinary and necessary expenses

paid or incurred in carrying on a trade or business.  However, taxpayers must

---

[16]Respondent argues for the first time on brief that certain of these expenses constitute nondeductible startup expenditures under sec. 195.  This issue represents a new matter which would require the presentation of different evidence.  See Rule 142(a); Shea v. Commissioner, 112 T.C. 183, 197 (1999).  Since this issue was raised for the first time after the evidentiary record was closed, petitioner's ability to respond adequately was prejudiced and justice requires that we not consider this issue.  See Sundstrand Corp. & Subs. v. Commissioner, 96 T.C. 226, 347-348 (1991); Bussing v. Commissioner, 88 T.C. 449, 455 n.6 (1987); Leahy v. Commissioner, 87 T.C. 56, 64-65 (1986).

[17]As noted, petitioner has not claimed, or shown entitlement to, any shift in the burden of proof to respondent under sec. 7491(a).

[*20] maintain books and records sufficient to establish the amounts of any expenses. Sec. 6001; sec. 1.6001-1(a), Income Tax Regs. In the event a taxpayer establishes that he has incurred a deductible expense but is unable to substantiate the precise amount, the Court may approximate the amount of the deduction, bearing heavily against the taxpayer whose inexactitude is of his own making. Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930). (Estimating deduction amounts as sanctioned in that case is referred to as the "Cohan rule".) The Court must, however, have evidence sufficient to provide a basis upon which an estimate can be made. Norgaard v. Commissioner, 939 F.2d 874, 879 (9th Cir. 1991), aff'g in part, rev'g in part T.C. Memo. 1989-390; Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985).

Section 274(d) imposes stricter substantiation requirements for deductions of travel and meals and entertainment expenses. No such deduction is allowed unless the taxpayer substantiates, by adequate records or by sufficient evidence corroborating the taxpayer's own statements, the amount, time and place, business purpose, and recipient's business relationship for each expenditure. Sec. 274(d); sec. 1.274-5T(a), (b), and (c), Temporary Income Tax Regs., 50 Fed. Reg. 46014-46017 (Nov. 6, 1985). Section 274(d) was intended to preclude use of the Cohan rule for the expense categories it covers. Sanford v. Commissioner, 50 T.C. 823,

**[\*21]** 827-828 (1968), aff'd per curiam, 412 F.2d 201 (2d Cir. 1969). If a taxpayer establishes that the failure to produce adequate records for this purpose is due to the loss of such records through circumstances beyond his control, he may substantiate an expense by a reasonable reconstruction of his expenditure. Sec. 1.274-5T(c)(5), Temporary Income Tax Regs., 50 Fed. Reg. 46022 (Nov. 6, 1985).

Petitioner testified that he documented the date, amount, and business purpose of each of his consulting, printing, and travel expenditures by making entries in a spiral notebook at or near the time of the expenditure and that he similarly documented his meals and entertainment expenses in a day timer. These documents were destroyed, however, when he failed to retrieve them within a short deadline from a storage facility which the city of Portland acquired by eminent domain.

A. Travel and Meals and Entertainment Expenses

Petitioner contends that he is entitled to deduct the travel and meals and entertainment expenses he reported for 2001 and 2002 on two grounds. Petitioner claims that he can substantiate a portion of the expenditures with bank statements and that he is entitled to substantiate the remaining expenses through a reasonable reconstruction pursuant to section 1.274-5T(c)(5), Temporary Income Tax Regs., supra, because his records were lost through circumstances beyond his control.

**[\*22]**     1.     <u>Deductions Substantiated With Bank Statements</u>

The bank statements in evidence are from a Bank of America joint checking account in the individual names of petitioner and his then spouse. It is apparent that the account could be accessed by means of a debit card, as most of the statement entries are for "merchant purchases" with the merchant listed (such as an airline, hotel, or restaurant), a transaction date, and an amount. Petitioner testified and contends on brief that the expenditures recorded in the Bank of America joint checking account statements for airlines, hotels, and restaurants were paid in connection with his work on behalf of A&G during 2001 and 2002. By petitioner's reckoning, the entries substantiate $22,257 and $449 of travel expenditures for 2001 and 2002, respectively, and $6,144 and $319 of meals and entertainment expenditures for 2001 and 2002, respectively. (He reaches those figures by treating essentially every expenditure of that nature as business related.)

However, because these expenditures were made in conducting A&G's business, they are partnership expenses. It is well established that a partner cannot himself deduct the expenses of a partnership, even if he incurred the expenses in furtherance of partnership business. See <u>McLauchlan v. Commissioner</u>, 558 F. App'x 374 (5th Cir. 2014), <u>aff'g and remanding on another issue</u> T.C. Memo. 2011-289; <u>Cropland Chem. Corp. v. Commissioner</u>, 75 T.C. 288, 295 (1980), <u>aff'd</u>

[*23] <u>without published opinion</u>, 665 F.2d 1050 (7th Cir. 1981); <u>Wallendal v. Commissioner</u>, 31 T.C. 1249, 1252 (1959).  An exception applies when there is an agreement among the partners in a partnership agreement, or in a routine partnership practice tantamount to an agreement, that calls for a partner to pay partnership expenses out of his own funds.  See <u>Klein v. Commissioner</u>, 25 T.C. 1045, 1051-1052 (1956).  Petitioner argues on brief that as the managing and only active partner in A&G, he effectively implemented by "fiat" the practice tantamount to an agreement that he was obliged to pay for travel and meals and entertainment expenses of the partnership out of his own funds.  There is no competent evidence to support this argument, however.  There was no testimony concerning any such arrangement with the other partners; petitioner merely testified that he deducted the expenses on his returns because he was not reimbursed for them.  The Schedules K-1 for 2001 and 2002 demonstrate that the five A&G partners allocated partnership expenses (and income) on an even, 20% pro rata basis.  We conclude that there is insufficient evidence to bring petitioner's claimed deductions within the <u>Klein</u> exception.

In addition, A&G itself deducted substantial travel and meals and entertainment expenses for 2001 and 2002 on its returns; namely, travel expenses of $39,946 and $65,899 for 2001 and 2002, respectively, and meals and

[*24] entertainment expenses of $5,335 and $10,275 for 2001 and 2002, respectively. These A&G deductions exceed the amounts that petitioner contends he has substantiated with the bank statements, with one exception.[18] As petitioner was, according to his testimony, the only active partner and the one who traveled for the purpose of developing new customer relationships, there is a reasonable inference to be drawn that the travel and meals and entertainment expenses deducted by A&G reflected reimbursements it made to petitioner for such expenses. Petitioner testified that he was not reimbursed, and on brief his counsel argues that it was "more likely" that the expenses A&G deducted were for employees rather than for partners.

Petitioner has the burden of proof, and there is no evidence in the record concerning the nature of the travel and meals and entertainment expense deductions that A&G claimed. Petitioner testified that he was not reimbursed, but he had difficulty recalling details with respect to many other matters. We are not

---

[18]The exception concerns the meals and entertainment expense deduction for 2001. A&G claimed a deduction (before the 50% reduction required by sec. 274(n)) of $5,335 whereas the amount petitioner contends is substantiated in his bank statements is $6,144. Petitioner reaches the $6,144 figure by treating 90% of the restaurant expenditures listed in the bank statements as business meals. There are many debit card entries for obviously personal items in the bank statements. We accordingly decline to credit petitioner's testimony that 90% of the restaurant expenditures recorded in the bank statements were business rather than personal expenditures.

[*25] bound to accept his testimony on this point. See Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). There is no evidence that there were, in addition to petitioner, partnership employees who traveled extensively. Petitioner was the managing and tax matters partner of A&G and could have corroborated his testimony by producing partnership records demonstrating that A&G had reimbursed other partnership employees for the travel and meals and entertainment expenses it deducted.[19] He did not. In these circumstances, given the substantial travel and meals and entertainment deductions claimed by A&G, we find that petitioner has failed to demonstrate that he was not reimbursed by A&G for the travel and meals and entertainment expenditures listed in the statements from the Bank of America joint account. Accordingly, aside from the lack of any evidence of a partnership agreement requiring him to pay these expenses out of his own funds, petitioner is not entitled to deduct the expenses recorded in the bank statements because he has failed to show that he was not reimbursed for them.

---

[19]Petitioner did not make any specific claim that the partnership's records were lost when the contents of his storage unit were destroyed. Even if the partnership records had been lost in that manner, it would have been incumbent upon petitioner, as part of demonstrating a reasonable reconstruction effort, to provide evidence that the accountant who prepared A&G's returns was consulted regarding any records he retained. Petitioner did not do so.

**[*26]** 2. Remaining Deductions

That leaves in dispute reported travel expenses of $65,643 and $102,551 and reported meals and entertainment expenses of $11,856 and $16,181 for 2001 and 2002, respectively. Petitioner testified that these expenses were paid in pursuit of his Schedule C business seeking exclusive distributorship rights for Chinese products.[20] Petitioner offered no written substantiation to document these expenses. He relies on his testimony alone, citing section 1.274-5T(c)(4) and (5), Temporary Income Tax Regs., 50 Fed. Reg. 46022 (Nov. 6, 1985). Petitioner contends that he is entitled to substantiate these expenditures through a reasonable reconstruction because the spiral notebooks and day timers in which he had recorded the particulars of these expenditures were destroyed when he failed to retrieve them from the storage unit he leased.

Respondent, pointing to the options available to petitioner for preserving the storage unit's contents--he could have used a free moving service or entered into contracts with a mover and a new storage facility without personally appearing-- argues that the loss of records was not beyond petitioner's control, disqualifying

---

[20]To the extent petitioner claims any of these expenses were paid in connection with his activities as managing partner of A&G, we conclude that he has not shown entitlement to any deduction for the reasons previously outlined.

**[*27]** him from using a reasonable reconstruction as provided for in section 1.274-5T(c)(5), Temporary Income Tax Regs., <u>supra</u>.  We disagree.

Section 1.274-5T(c)(5), Temporary Income Tax Regs., <u>supra</u>, provides in full:

> (5) <u>Loss of records due to circumstances beyond control of the taxpayer</u>.  Where the taxpayer establishes that the failure to produce adequate records is due to the loss of such records through circumstances beyond the taxpayer's control, such as destruction by fire, flood, earthquake, or other casualty, the taxpayer shall have a right to substantiate a deduction by reasonable reconstruction of his expenditures or use.

The regulation does not comprehensively define what constitutes circumstances beyond the taxpayer's control, providing instead a nonexclusive example; namely, "such as destruction by" various casualties.  As to whether this loss of records was beyond petitioner's control, we observe that petitioner took reasonable steps to safeguard his records by prepaying two years' rent on his storage unit.  Once in China, he encountered unforeseeable circumstances:  the imminent destruction of the storage facility on account of an eminent domain acquisition and the need to arrange for the transfer of his storage unit's contents on short notice.  While it is true that the Portland Development Commission offered various accommodations to the storage unit lessees it was abruptly displacing, the fact remains that it was still necessary for petitioner--in less than a month, from China--to find an

[*28] individual willing to appear at the storage facility on his behalf in the middle of the holiday season and to get into that individual's hands a properly executed power of attorney as well as the key to the storage unit. In our judgment, those hurdles were too high, and accordingly the loss of his records was beyond petitioner's control within the meaning of section 1.274-5T(c)(5), Temporary Income Tax Regs., supra.

As a consequence, petitioner "ha[s] a right" under the regulations to substantiate his claimed deductions by means of a "reasonable reconstruction". The Cohan rule comes back into play in these circumstances. See Scully v. Commissioner, T.C. Memo. 2013-229, at *17. Where records have been lost because of circumstances beyond a taxpayer's control, he must still undertake a "reasonable reconstruction", which includes substantiation through secondary evidence. See, e.g., Boyd v. Commissioner, 122 T.C. 305, 320 (2004); Cox v. Commissioner, T.C. Memo. 2013-75; DeLima v. Commissioner, T.C. Memo. 2012-291; Chong v. Commissioner, T.C. Memo. 2007-12.

The evidence establishes that there were two accounts through which petitioner paid the expenses of his Schedule C business. Petitioner testified that he paid expenses of his Schedule C business through a business checking account at Bank of America held in the name of Probandt Associates. Petitioner also

[*29] maintained a Capital One credit card account through which he paid expenses of his Schedule C business.

We are satisfied that there was a reasonable effort to reconstruct, through third-party sources, any expenses that were paid through the Capital One account (though that reconstruction effort was unsuccessful). The same cannot be said for the Bank of America business checking account established in the name of Probandt Associates. There is no evidence of any efforts made to reconstruct expenditures through the records of that account.[21]

We find guidance for the unusual circumstances surrounding the Capital One account, where a reasonable reconstruction has been thwarted by a third party's failure, in section 1.274-5T(c)(4), Temporary Income Tax Regs., supra, which petitioner has invoked. That regulation provides:

> (4) Substantiation in exceptional circumstances. If a taxpayer establishes that, by reason of the inherent nature of the situation--

---

[21]There are statements in evidence from a different Bank of America checking account; namely, the joint checking account held in the name of petitioner and his then spouse. As discussed previously, petitioner testified that the debit card expenditures from this account were for travel and meals and entertainment expenses he paid in connection with his activities on behalf of A&G.

**[*30]**        (i) He was unable to obtain evidence with respect to an element of the expenditure or use which conforms fully to the "adequate records" requirements of paragraph (c)(2) of this section,[22]

        (ii) He is unable to obtain evidence with respect to such element which conforms fully to the "other sufficient evidence" requirements of paragraph (c)(3) of this section,[23] and

        (iii) He has presented other evidence, with respect to such element, which possesses the highest degree of probative value possible under the circumstances, such other evidence shall be considered to satisfy the substantiation requirements of section 274(d) and this paragraph.

We believe petitioner has satisfied the regulation with respect to any expenses paid through the Capital One account. He is unable to satisfy the "adequate records" records requirements because his day timers and spiral notebook wherein he contemporaneously documented expenditures and their purpose were lost when his storage unit contents were destroyed. He is unable to satisfy the "other sufficient evidence" requirements because the Capital One credit

---

[22]"Adequate records" for this purpose generally means a contemporaneously prepared account book, diary, log, statement of expense, trip sheets, or other record, coupled with documentary evidence such as receipts or paid bills. See sec. 1.274-5(c)(2)(iii), Income Tax Regs.; sec. 1.274-5T(c)(2)(i) and (ii), Temporary Income Tax Regs., 50 Fed. Reg. 46017-46019 (Nov. 6, 1985).

[23]"Other sufficient evidence" for this purpose in general means the taxpayer's own statement and corroborative evidence such as receipts or paid bills. See sec. 1.274-5T(c)(3)(i), Temporary Income Tax Regs., 50 Fed. Reg. 46020, 46022 (Nov. 6, 1985); see also sec. 1.274-5(c)(2)(iii), Income Tax Regs.

**[\*31]** card account statements--which might corroborate his own statement--are unavailable despite his reasonable efforts to obtain them.

That leaves the question of whether the third requirement for "exceptional circumstances" substantiation has been satisfied; namely, whether petitioner presented evidence to substantiate the deduction "which possesses the highest degree of probative value possible under the circumstances". We conclude that he has. Petitioner was a credible witness in this regard. We are persuaded that he traveled extensively to China during 2001 and 2002. The evidence he has proffered is his own statement concerning the trips to China and their purpose, as well as testimony to the effect that he consulted his now destroyed records to provide information to his return preparer for the preparation of his 2001 and 2002 returns in 2004. The amounts reported as travel and meals and entertainment expenses on the Schedule C for each year thus reflect those now destroyed records. The impracticality of petitioner's obtaining written statements or testimony from the myriad vendors involved in typical travel and meals and entertainment expenditures persuades us that the return figures, coupled with petitioner's testimony concerning their source, constitute evidence "which possesses the highest degree of probative value possible under the circumstances".

**[*32]** That does not end the matter, however. Some of the Schedule C travel and meals and entertainment expenses for the years at issue were paid, according to petitioner's testimony, by means of the Bank of America business checking account in the name of Probandt Associates. Since the other Bank of America checking account petitioner maintained had a debit card he used, we infer that he employed the same feature to pay travel and meals and entertainment expenses through the business checking account. Neither petitioner nor his counsel offered any evidence of the efforts undertaken to obtain the records of that account from third-party sources or to reconstruct expenditures from any such records. For that reason, with respect to any expenditures made through the Bank of America business checking account, petitioner has failed to satisfy the prerequisites for the less stringent "other sufficient evidence" substantiation alternatives available under section 1.274-5T(c)(3)(i), Temporary Income Tax Regs., supra. See Cox v. Commissioner, T.C. Memo. 2013-75; DeLima v. Commissioner, T.C. Memo. 2012-291; Chong v. Commissioner, T.C. Memo. 2007-12.

Thus, we are left with a situation where the travel and meals and entertainment expenditures made through the Capital One account are eligible for the "exceptional circumstances" substantiation provided for in section 1.274-5T(c)(4), Temporary Income Tax Regs., supra, while those made through the Bank

**[*33]** of America account are not. Lacking the records of either account, however, we have no evidentiary basis for determining which portion of the travel and meals and entertainment expenses reported on petitioner's 2001 and 2002 Schedules C is allocable to each account. A reconstruction based on the Bank of America records would have made an allocation possible, and their unexplained absence is attributable to petitioner. However, because we are persuaded petitioner made trips to China for business purposes in both years, we will undertake a deemed allocation "bearing heavily * * * upon the taxpayer whose inexactitude is of his own making." See Cohan v. Commissioner, 39 F.2d at 544. We will treat 40% of each year's travel and meals and entertainment expenses paid in connection with petitioner's business endeavors in China as allocable to the Capital One account and therefore substantiated. Consequently, petitioner is entitled to deduct travel and meals and entertainment expenses for the years at issue as follows:

| Deductible Expenses | 2001 | 2002 |
|---|---|---|
| Travel | $26,257 | $41,020 |
| Meals & entertainment | [1]4,742 | 6,472 |

[1]The amounts for meals and entertainment expenses have been subjected to the 50% limitation of sec. 274(n).

**[*34]** B.    Consulting Expenses

On his Schedules C for 2001 and 2002 petitioner reported expenses for consulting fees of $65,000 and $50,000, respectively, the deductions for which respondent disallowed in full.  Petitioner testified that these amounts were paid to three individuals, either by check or by wire transfer, but he was unable to recall the bank account through which the payments were made.  Petitioner attributes the lack of documentation to substantiate these expenditures to the loss of the spiral notebook when the contents of his storage unit were destroyed.  Given this loss of records, petitioner contends, the Court should estimate the deduction amounts under the Cohan rule.

We disagree.  Even for expenses that do not have to be substantiated pursuant to section 274, there remains the general requirement, arising from the taxpayer's bearing the burden of proof, that he marshal any secondary evidence reasonably available when records have been lost.  See Malinowski v. Commissioner, 71 T.C. 1120, 1125 (1979); Watson v. Commissioner, T.C. Memo. 1988-29.  We may at our discretion rely solely on a taxpayer's credible testimony to substantiate a deduction, but generally only where no documentary evidence is available.  Malinowski v. Commissioner, 71 T.C. at 1125.  Given the limited number of individuals whom petitioner contends received the consulting fees and

**[\*35]** the amounts involved we are not persuaded that no documentation of these payments was reasonably available. Petitioner might have proffered testimony from the recipients or some documentation available from them. He did not. Petitioner has therefore not satisfied the conditions precedent to substantiating the expenses for consulting fees solely on the basis of his testimony. We accordingly sustain the disallowance of deductions for these expenses.

C.    Printing Expenses

Petitioner reported printing expenses of $18,000 and $24,500 on his Schedules C for 2001 and 2002, respectively, the deductions for which respondent disallowed in full. Petitioner testified that the printed materials were used in his Schedule C business in connection with efforts to secure exclusive U.S. distributorship rights from Chinese manufacturers and that almost all of the expenditures were made at a particular Kinko's location in Portland. The record does not establish whether the expenditures were paid through the Capital One account, the Bank of America business account, or some other means. Petitioner again invokes the Cohan rule.

The same principles apply here as with the consulting fees. Given the magnitude of these expenditures at a single vendor, we believe petitioner was obligated to undertake reasonable efforts to obtain secondary evidence to

[*36] substantiate these expenses, such as some effort to elicit information or documentation from the vendor or to establish the account through which the expenditures were paid. Petitioner has not shown that such secondary evidence was unavailable so that he should be permitted to substantiate the printing expenses solely by his testimony. We accordingly sustain the disallowance of deductions for these expenses.

D. Rent Expense

Petitioner reported a $12,500 rent expense on his 2001 Schedule C, which the notice of deficiency did not disallow. Although respondent did not raise the issue in his answer, we conclude, on the basis of the parties' stipulations and arguments on brief, that this issue was tried by consent and is properly before the Court. See Rule 41(b)(1); Estate of Belcher v. Commissioner, 83 T.C. 227, 227 n.2 (1984). As the disallowance of the claimed rent expense would increase the deficiency for 2001, respondent bears the burden of proof on this issue. See Rule 142(a); see also Truesdell v. Commissioner, 89 T.C. at 1296.

There is no documentary substantiation of the reported rent expense. Petitioner testified that the expense reflects rent he paid of approximately $1,000 per month during 2001 for an office in Chicago leased from one of A&G's other passive investor partners. Petitioner testified that he paid rent because that partner

**[\*37]** had lent him money and wanted to "keep track"of him. Respondent argues, and we agree, that petitioner's testimony demonstrates that the rent expense lacked a business purpose. As the rent was also almost certainly paid by check, and there are no canceled checks in evidence, respondent has also shown that the rent expense has not been substantiated. Accordingly, respondent has met his burden, and we conclude that petitioner is not entitled to deduct the rent expense reported for 2001.

III.    Additions to Tax and Penalties

Respondent determined additions to tax under section 6651(a)(1) for failure to timely file and accuracy-related penalties under section 6662(a) and (b)(1) and (2) on the basis of negligence or disregard of rules or regulations and a substantial understatement of income tax for 2001 and 2002. In general, the Commissioner has the burden of production with respect to the imposition of additions to tax and penalties and must offer sufficient evidence to indicate that imposing them is appropriate. Sec. 7491(c); see also Higbee v. Commissioner, 116 T.C. 438, 446 (2001). Once the Commissioner has satisfied this burden, the burden shifts to the taxpayer to show that it is inappropriate to impose the penalty because of exculpatory factors, including reasonable cause. Higbee v. Commissioner, 116 T.C. at 446-447.

**[*38]** A.    <u>Section 6651(a)(1) Additions to Tax</u>

Section 6651(a)(1) imposes an addition to tax for any failure to file a return by its due date; the addition is equal to 5% of the amount of tax required to be shown on the return for each month or portion thereof that the return is late, up to a maximum of 25%. The addition applies unless the taxpayer shows that the failure to timely file was due to reasonable cause and not due to willful neglect. Sec. 6651(a)(1); <u>see also</u> <u>United States v. Boyle</u>, 469 U.S. 241, 245 (1985). A failure to timely file is due to reasonable cause "[i]f the taxpayer exercised ordinary business care and prudence and was nevertheless unable to file the return within the prescribed time". Sec. 301.6651-1(c)(1), Proced. & Admin. Regs.; <u>see also</u> <u>Boyle</u>, 469 U.S. at 246. Willful neglect is interpreted as a "conscious, intentional failure or reckless indifference." <u>Boyle</u>, 469 U.S. at 245.

The parties stipulated that petitioner's 2001 return was due October 15, 2002, and that his 2002 return was due April 15, 2003. Respondent received and filed both returns on April 10, 2004. <u>See</u> <u>Emmons v. Commissioner</u>, 898 F.2d 50, 51 (5th Cir. 1990), <u>aff'g</u> 92 T.C. 342 (1989); <u>First Charter Fin. Corp. v. United States</u>, 669 F.2d 1342, 1345-1346 (9th Cir. 1982). These undisputed facts satisfy respondent's burden of production under section 7491(c) and establish petitioner's

**[\*39]** liability for the section 6651(a)(1) additions to tax unless petitioner can demonstrate reasonable cause for his failure to timely file.

Petitioner claims that he is not liable for the section 6651(a)(1) additions to tax because he reasonably but mistakenly believed that he had no income for 2001 and 2002 and thus concluded that he did not have to file returns for those years. Specifically, petitioner claims that because he believed that his income was substantially lower than his expenses and that he had the documentation to substantiate these expenses, he did not believe he was required to file any return.

Taxpayers who deliberately omit to file returns must use reasonable care to ascertain that no returns are necessary. See Beck Chem. Equip. Corp. v. Commissioner, 27 T.C. 840, 860 (1957); Thomas v. Commissioner, T.C. Memo. 1984-72. Without more, petitioner's mistaken belief that no return was required does not constitute reasonable cause for noncompliance. See Beck Chem. Equip. Corp. v. Commissioner, 27 T.C. at 860; Henningsen v. Commissioner, 26 T.C. 528, 536 (1956) (noting that mere uninformed belief, no matter how sincere or innocent, is insufficient to constitute reasonable cause), aff'd, 243 F.2d 954 (4th Cir. 1957). There is no evidence that petitioner used reasonable care in deciding not to file his 2001 and 2002 returns. Petitioner has provided no evidence that he obtained professional advice as to his filing obligations or that he undertook any

**[\*40]** other investigation to determine whether he was required to file returns for 2001 and 2002. To the extent his belief that he had no taxable income for filing purposes was based on a failure to understand that his distributive share of the A&G partnership profits was income to him whether or not received, such a mistake of law does not give rise to reasonable cause. See Henningsen v. Commissioner, 26 T.C. at 536.

Considering all the facts and circumstances, petitioner has not shown reasonable cause with respect to his failure to timely file returns for 2001 and 2002. Respondent's determinations of the additions to tax under section 6651(a)(1) for 2001 and 2002 are sustained.

B.     Section 6662(a) Accuracy-Related Penalties

Section 6662(a) and (b)(1) and (2) imposes a 20% penalty on any underpayment of tax attributable to negligence or disregard of rules and regulations or a substantial understatement of income tax, respectively. "'[N]egligence' includes any failure to make a reasonable attempt to comply" with the internal revenue laws. Sec. 6662(c). It connotes "a lack of due care or the failure to do what a reasonable and ordinarily prudent person would do under the circumstances." Freytag v. Commissioner, 89 T.C. 849, 887 (1987) (quoting Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967), aff'g 43 T.C. 168

**[\*41]**(1964) and T.C. Memo. 1964-299), aff'd, 904 F.2d 1011 (5th Cir. 1990), aff'd, 501 U.S. 868 (1991).  This includes "any failure by the taxpayer to keep adequate books and records or to substantiate items properly."  Sec. 1.6662-3(b)(1), Income Tax Regs.  Disregard of rules and regulations includes any careless, reckless, or intentional disregard of the Internal Revenue Code, the regulations, or certain Internal Revenue Service administrative guidance.  Id. subpara. (2).  In general, an "understatement" of income tax is the excess of the amount of tax required to be shown on the return over the amount of tax actually shown on the return.  Sec. 6662(d)(2)(A).  An understatement of income tax is "substantial" if it exceeds the greater of $5,000 or 10% of the tax required to be shown on the return.  Id. para. (1)(A).

No penalty is imposed with respect to any portion of an underpayment if the taxpayer acted with reasonable cause and in good faith with regard to that portion.  Sec. 6664(c)(1).  That determination is made case-by-case, depending on the facts and circumstances.  Sec. 1.6664-4(b)(1), Income Tax Regs.  Those circumstances include the experience, knowledge, and education of the taxpayer.  Id.

Respondent has met his burden of production with respect to petitioner's negligence and disregard of rules and regulations as to the underpayment attributable to the unreported partnership income.  Petitioner failed to report

[*42] $177,167 of his distributive share of A&G's ordinary income for 2002. Petitioner has not demonstrated that this failure was due to reasonable cause, as there is no evidence that he undertook any investigation to determine the correct method of reporting his partnership income. This portion of the underpayment is therefore attributable to negligence.

Additionally, petitioner has conceded that he failed to report dividend and interest income totaling $7,133 and $1,828 for 2001 and 2002, respectively. The notice of deficiency noted that all of the foregoing amounts were reported to respondent by third parties on information returns, which creates an inference in the absence of any contrary evidence that petitioner also received copies of these information returns. Moreover, the bulk of this unreported income was interest from A&G, for which petitioner served as managing partner. Negligence is strongly indicated where a taxpayer fails to report income reflected on information returns. Sec. 1.6662-3(b)(1)(i), Income Tax Regs. Respondent has therefore met his burden of production regarding this portion of the underpayment, and petitioner has not offered any evidence of reasonable cause. Accordingly, the portion of the underpayment attributable to the unreported interest and dividend income for 2001 and 2002 is due to negligence.

[*43] Respondent has also met his burden of production with respect to petitioner's negligence for the portion of the underpayment attributable to the disallowed travel and meals and entertainment expenses petitioner claimed in connection with A&G's business for 2001 and 2002. Although as managing partner petitioner had access to A&G's records, he failed to produce any documentary evidence to support his claim that he was not reimbursed for these expenses by A&G or that the expenses were not deducted by A&G. Petitioner's failure to maintain this substantiation for these expenses constitutes negligence. See sec. 1.6662-3(b)(1), Income Tax Regs.

Finally, respondent has met his burden of production with respect to the portion of the underpayment attributable to deductions for those Schedule C expenses for printing, consulting, travel, and meals and entertainment that petitioner claimed for 2001 and 2002 in connection with his business endeavors in China and which we have disallowed.[24] Negligence includes a failure to keep adequate books and records or to substantiate expenses as required by sections 274

---

[24]Although the parties tried petitioner's entitlement to a Schedule C rent expense deduction for 2001 by consent, respondent has not clarified whether he is asserting an accuracy-related penalty relating to the portion of the underpayment attributable to the rent expense deduction disallowed for 2001. Consequently, we treat respondent as having conceded that the underpayment attributable to petitioner's unsubstantiated rent expense deduction for 2001 is not subject to a penalty.

[*44] and 6001.  Sec. 1.6662-3(b)(1), Income Tax Regs.  Petitioner has failed to demonstrate that he acted with reasonable cause and good faith with respect to his lack of substantiation for these items.  Petitioner argues that penalties are not warranted because his records were lost due to circumstances beyond his control.  However, even where a taxpayer loses his records through circumstances beyond his control, he is still obliged to make a reasonable attempt to reconstruct substantiation of his expenses through other means.  See Kolbeck v. Commissioner, T.C. Memo. 2005-253.  Petitioner failed to make any attempt to reconstruct his China-related expenses except those paid with his Capital One credit card account, such as by attempting to obtain records of the Bank of America account from which he also paid China-related expenses.  Further, petitioner made no effort to reconstruct substantiation for his reported consulting and printing expenses.  The portion of the underpayment attributable to the foregoing items is therefore due to negligence.

In the event the Rule 155 computation indicates that petitioner's understatements of income tax for 2001 and 2002 exceed the greater of $5,000 or 10% of the amounts of tax required to be shown on the returns, we conclude that the underpayments for 2001 and 2002 are also attributable to a substantial

**[*45]** understatement of income tax for which petitioner has not shown reasonable cause.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.